UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIC (AKA DIAMOND) VARGAS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, *et al.*,<br><br>　　　　　Defendants. | Case No. 1:20-cv-00083-JLT-CDB (PC)<br><br>THIRD SCREENING ORDER REQUIRING PLAINTIFF TO FILE A RESPONSE<br><br>(Doc. 20)<br><br>**THIRTY (30) DAY DEADLINE** |

Plaintiff Dominic Vargas, also known as Diamond Vargas, is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.  Plaintiff suffers from gender dysphoria and asserts that Defendants have denied him medically necessary sex reassignment surgery ("SRS") in violation of the Eighth and Fourteenth Amendments.  Previously, the Court screened Plaintiff's first amended complaint and determined that it failed to state a claim upon which relief may be granted because Plaintiff filed to include a demand for relief.  (Doc. 17.)  Plaintiff filed a second amended complaint ("SAC"), which now is before the Court for screening.  (Doc. 20.)

**I.  SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner raises claims that are

1  frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary
2  relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).  The Court must
3  dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to
4  support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699
5  (9th Cir. 1990).

## II.    PLEADING REQUIREMENTS

### A.    Federal Rule of Civil Procedure 8(a)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The statement must give the defendant fair notice of the plaintiff's claims and the grounds supporting the claims.  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  Factual allegations are accepted as true, but legal conclusions are not.  *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted).  This liberal pleading standard applies to a plaintiff's factual allegations but not to his legal theories.  *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989).  Moreover, a liberal construction of the complaint may not supply essential elements of a claim not pleaded by the plaintiff, *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks and citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (*Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008)).  The mere possibility of misconduct and facts merely consistent with liability is insufficient to state a cognizable claim.  *Iqbal*, 556 U.S. at 678; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

**B.     Linkage and Causation**

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373–75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

In a section 1983 action, a supervisor cannot be held vicariously liable for the actions of lower officials. *Lemire v. Cali. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013). Supervisory personnel cannot be held liable for the actions of their employees under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676–77; *Lemire v. Cali. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013). Therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 677; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979).

A supervisor may be held liable under section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)); *accord Lolli v. Cnty. of Orange,* 351 F.3d 410, 418 (9th Cir. 2003). This causal connection can include: "1) [the supervisor's] own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) [their] conduct that showed a reckless or callous indifference to the rights of others." *Lemire*, 726 F.3d at 1075 (quoting *Cunningham v. Gates,* 229 F.3d 1271, 1292 (9th Cir. 2000)).

3

### III.     PLAINTIFF'S ALLEGATIONS[1]

Plaintiff is a state inmate housed at Central California Women's Facility ("CCWF") in Chowchilla, California. Plaintiff contends that Defendants unlawfully denied him access to medically necessary SRS. Plaintiff asserts Eighth Amendment medical indifference claims and a Fourteenth Amendment equal protection claim against employees of the California Department of Corrections and Rehabilitation ("CDCR"). These individuals are identified and described by Plaintiff as follows:

(1)     Jeff Macomber,[2] Secretary of CDCR, "had ultimate responsibility and authority for the operation of CDCR, including the administration of health care and implementation of medical care policies governing CDCR, including the administration of health care and implementation of medical care policies governing CDCR." (Doc. 20 at 3.)

(2)     Leslie Taylor, Deputy Medical Executive of clinical operations, who "served as the chair of the Statewide Medical Authorization Review Team ("SMART") and Gender Affirming Surgery Review Committee (GASRC)" and announced the final denial of Plaintiff's SRS request. (*Id.* at 3–4.)

(3)     Robert Mitchell, Chief Medical Executive of CCWF, who also announced the denial of Plaintiff's SRS request and had "ultimate authority" over Plaintiff's request for SRS. (*Id.* at 4).

(4)     Stephanie Neumann, Chief of Mental Health, "believed to be a member of the SMART Committee." (*Id.* at 4–7.)

(5)     Tristan Buzzini, Sr. Psychologist, "believed to be a member of the SMART Committee." (*Id.* at 7.)

---

[1]The Court accepts Plaintiff's allegations in the SAC as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

[2] Plaintiff named Rick Diaz, Secretary of CDCR, as a defendant. Mr. Diaz was replaced by Kathleen Allison on October 1, 2020. Then on December 12, 2022, Jeff Macomber was appointed CDCR Secretary, replacing Kathleen Allison. Under Rule 25 of the Federal Rules of Civil Procedure, when a public officer ceases to hold office, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d).

1        (6)    Molli Rudich, "utilization management[3] and believed to be a member of the SMART Committee." (*Id.*)

       (7)    Shama Chaiken, doctor on the SMART Committee.

       Plaintiff sues each defendant in his or her official and individual capacities. Plaintiff alleges that, "as members of the SMART and GASRC, these defendants had the authority to grant or deny Plaintiff's access to gender transition surgeries and are responsible for denying Plaintiff access to medically necessary care . . . ." (*Id.*)

       Plaintiff is a transgender man and suffers from severe gender dysphoria. Plaintiff was born in Puerto Rico and named Shirley Vargas. Plaintiff describes a violent, abusive childhood, with a mother who beat him over his love of sports and masculinity; ridiculed and humiliated him; and dressed him in dresses and forced him to be a model. Plaintiff left home when he was fifteen years old, changed his name to Diamond Vargas, and became a "male impersonator." He has worked and lived as a man since the late 1980s and early 1990s. Plaintiff has presented himself as a man while in custody of CDCR. When he was diagnosed with gender dysphoria in 2017, Plaintiff's doctors determined it was medically necessary for him to receive treatment for his condition, and he began hormone replacement therapy in the form of testosterone injections.[4] (Doc. 20 at 9.) Plaintiff alleges that the treatment has worsened his gender dysphoria because of side effects including increased breast size and the re-onset of menses.

       Plaintiff reported to his treating providers multiple times that the hormone regimen was not adequately reducing his symptoms of gender dysphoria. In 2018, Plaintiff asked his primary care physician, Dr. Gonzales, to be considered for SRS. Dr. Gonzales confirmed his eligibility for SRS and submitted a Physician Request for Services for SRS. Dr. Chris S. Glass, Plaintiff's treating psychologist, completed and submitted a CDCR evaluation for consideration for SRS. Defendant "Leslie Taylor along with the SMART and the GASRC" denied Plaintiff's request for

---

[3] Plaintiff does not specify whether Defendant Rudich was a member of the Institutional Utilization Management Committee or the Headquarters Utilization Management Committee. *See* Cal. Code Regs. tit. 15, § 3999.98.

[4] Plaintiff also alleges he has received hormone replacement therapy to treat his condition since 1984. (Doc. 20 at 7.)

5

SRS, finding that the SRS was not medically necessary and that the current treatment provided significant, adequate, and sufficient relief.

Plaintiff asserts that leading medical research and well-established and widely accepted medical standards of care recognize that SRS is a medically necessary treatment for severe cases of gender dysphoria.  Therefore, Plaintiff asserts that the failure to recognize and affirm Plaintiff's male gender identity "evidences the incompetence" regarding Plaintiff's and illustrates deliberate indifference by Defendants to Plaintiff's serious medical condition.  Plaintiff further argues that Defendants' failure to grant Plaintiff's request for SRS was unreasonable and manifested a wanton disregard for appropriate treatment of Plaintiff's gender dysphoria. Additionally, Defendants failed to take reasonable measures to address Plaintiff's ongoing mental anguish.  The denial of SRS has caused irreparable harm. Plaintiff continues to suffer from severe anxiety, depression, and distress caused by his gender dysphoria, and he struggles with suicidal ideations.

Plaintiff argues in his first claim that the Defendants' denial of a medically necessary surgery amounts to cruel and unusual punishment in violation of the Eight Amendment.

In his second claim, Plaintiff alleges that each Defendant violated the Due Process clause of the Fourteenth Amendment and applied a policy of disparate treatment based on gender or transgender status.  Plaintiff asserts that the temporary amendments to California Code of Regulations title 15, section 3350.1(c) categorically excludes SRS.[5]  Other exclusions require a specific procedure to determine if a treatment exclusion may be medically necessary for a specific individual.

CDCR policy requires transgender prisoners seeking SRS for gender dysphoria to undergo a different and more onerous process than cisgender inmates seeking SRS.  Plaintiff thus alleges that the regulatory scheme is facially discriminatory against transgender and non-cisgender prisoners because medically necessary surgeries are unavailable to them, while cisgender prisoners can receive the same medically necessary procedures, *e.g.*, bilateral mastectomy, hysterectomy, salpingo-oophorectomy, phalloplasty, urethroplasty, scrotoplasty,

---

[5] Under the current regulations, SRS is no longer listed as a treatment exclusion. Cal. Code. Regs. tit. 15, § 3999.200(b).

and testicular prostheses. Plaintiff asserts that the disparity in treatment does not further any important government interest, nor is it rationally related to any legitimate government interest. Plaintiff argues that, by failing to provide SRS to Plaintiff while incarcerated, Defendants have deprived Plaintiff of his right to equal protection under the laws guaranteed by the Fourteenth Amendment.

## IV.    DISCUSSION

### A.    Official v. Individual Capacity Claims

Plaintiff brings his claims against Defendants in their individual and official capacities. The Eleventh Amendment bars suits for money damages in federal court against state officials in their official capacity. *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). However, it does not bar official capacity suit for prospective relief. *Wolfson v. Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010). A claim for prospective injunctive relief against a state official in his official capacity is not barred by the Eleventh Amendment, provided the official has authority to implement the requested relief. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 92 (1989); *accord Rouser v. White*, 707 F. Supp.2d 1055, 1066 (E.D. Cal. 2010) (proper defendant for injunctive relief in suit seeking implementation of CDCR policy is the CDCR Secretary in his official capacity).

Supervisory officials may be held liable if they "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989), *cited in Allen v. Birdsong*, 710 F. App'x 314 (9th Cir. 2018). General references to the job responsibilities and duties of a defendant's position are insufficient to state a claim for supervisory liability. *Rodriguez v. Singh*, No. 1:21-cv-00572-JLT-EPG (PC), 2023 WL 36160, at *6 (E.D. Cal. Jan. 4, 2023), *F.&R. adopted sub nom. Rodriguez v. Pfeiffer*, 2022 WL 1004739 (E.D. Cal. April 4, 2022).

Plaintiff seeks injunctive relief requiring Defendants to provide Plaintiff with "medically necessary surgeries to treat his significant distress from gender dysphoria"; and "injunctive relief declaring CDCR and [CCHCS][6] policies" on SRS treatment for gender dysphoria, reflected in

---

[6] California Correctional Health Care Services.

1   the California Code of Regulations Title 15, section 3320.1, unconstitutional on its face and as
2   applied to Plaintiff.
3         Jeff Macomber, Secretary of CDCR, is the only defendant alleged to have the
4   responsibility and authority to implement the medical care policies governing policies governing
5   CDCR.  Therefore, he may be sued in his official capacity, even though he had no personal
6   involvement in the alleged constitutional violations.  All other defendants may only be sued in
7   their individual capacities.

### B.   Eighth Amendment Medical Indifference

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend VIII.  The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  "After incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham v. Write*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  No matter where prisoners are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted).

To raise an Eighth Amendment claim in the context of medical care, a prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.  An Eighth Amendment claim "includes 'both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation omitted).  To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need. *Estelle*, 429 U.S. at 104.  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v.*

*Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc) (quoting *Estelle*, 429 U.S. at 104); *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

The subjective element concerns the defendant's response to a prisoner's serious medical need. *McGuckin*, 974 F.2d at 1059. To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at 837  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "It is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id.* at 842.

To demonstrate deliberate indifference, a plaintiff must show that the course of treatment taken is "medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citations and punctuation omitted); *accord Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014). "Deliberate indifference is a high legal standard." *Toguchi v. Chung,* 391 F.3d 1051, 1060 (9th Cir. 2004).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.,* 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. Cty. of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Under the Eighth Amendment, differences of opinion between a physician and an inmate, or between medical professionals, concerning appropriate medical care does not rise to deliberate

1   indifference.  *Hamby*, 821 F.3d at 1092 (quoting *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir.
2   2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir.
3   2014) (en banc); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (a prisoner's mere
4   disagreement with diagnosis or treatment does not support a claim of deliberate indifference).
5   To establish that a difference of opinion amounted to deliberate indifference, the prisoner "must
6   prove that the treatment he received 'was medically unacceptable under the circumstances' and
7   was chosen 'in conscious disregard of an excessive risk' to his health." *Windham v. Wofford*,
8   2023 WL 417907, *1 (9th Cir. Jan. 26, 2023) (quoting *Hamby*, 821 F.3d at 1092.

9        The complete denial of medical attention may constitute deliberate indifference.  *See*
10  *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986).  However, a physician need not fail
11  to treat an inmate altogether to violate that inmate's Eighth Amendment rights.  *Ortiz v. City of*
12  *Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curiam).  A failure to competently treat a
13  serious medical condition, even if some treatment is prescribed, may constitute deliberate
14  indifference in a particular case.  *Id.*

15       In this case, Plaintiff asserts that he suffers from a serious medical need for treatment of
16  his gender dysphoria, which is "[d]istress that is caused by a discrepancy between a person's
17  gender identity and that person's sex assigned at birth (and the associated gender role and/or
18  primary and secondary sex characteristics)." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 769 (9th Cir.
19  2019), *cert. denied sub nom. Idaho Dep't of Corr. v. Edmo*, 141 S. Ct. 610 (2020) (quoting World
20  Prof'l Ass'n for Transgender Health, Standards of Care for the Health of Transsexual,
21  Transgender, and Gender-Nonconforming People 2 (7th ed. 2011)).  The Ninth Circuit has
22  recognized that "[g]ender dysphoria is a serious but treatable medical condition." *Edmo*, 935
23  F.3d at 769.  Left untreated, gender dysphoria may cause debilitating distress and depression, and
24  may lead to self-injurious behavior, including suicide.  *Id.*  While some individuals with gender
25  dysphoria can be treated without surgery, for others surgery is medically necessary to alleviate
26  their gender dysphoria.  *Id.* at 771.  The accepted standard of care requires providers to diagnose,
27  assess, and treat gender dysphoria on an individual bases.  *Id.*  "Failure to follow an appropriate
28

treatment plan can expose transgender individuals to a serious risk of psychological and physical harm." *Id.*

For pleading purposes, Plaintiff has sufficiently satisfied both prongs of a claim for medical indifference. Plaintiff's severe gender dysphoria presents a serious medical need. He has urged that hormone therapy treatment is ineffective for treating his gender dysphoria and has worsened his condition because of side effects, causing him psychological harm to the point of having suicidal ideations. Plaintiff has alleged that Defendant Robert Mitchell and Defendants on the SMART Committee were deliberately indifferent to his serious medical need by denying his request for SRS, particularly in light of his treating physicians' opinions that SRS surgery was medically necessary.

Construing the SAC liberally, Plaintiff's allegations raise a cognizable claim for medical indifference under the Eighth Amendment.

### D. Fourteenth Amendment Due Process

The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection against the laws," which essentially requires all persons similarly situated to be treated alike. U.S. Const. amend. XIV; *see City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To state a claim under the Equal Protection Clause, Plaintiff must allege facts sufficient to support a claim that prison officials intentionally discriminated against him based on his membership in a protected class. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013). The United States Supreme Court has recognized that equal protection claims may be brought by a "'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Generally, legislation is presumed to be valid and will be sustained if it is rationally related to a legitimate state interest. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). However, when discrimination is based on transgender status, the court should apply an

intermediate scrutiny standard, "something more than rational basis but less than strict scrutiny." *Karnoski v. Trump*, 926 F.3d 1180, 1201 (9th Cir. 2019).

Plaintiff asserts that he is being treated differently based on transgender status. Plaintiff complains that the 2016 SRS guidelines prevents transgender prisoners from receiving medically necessary surgeries and prohibits treating physicians from opining about the necessity of SRS surgery for a prisoner. According to Plaintiff's arguments, transgender inmates must undergo a more onerous review process than cisgender inmates for obtaining medically necessary surgeries such as bilateral mastectomy, hysterectomy, salpingo-oophorectomy, etc. Such procedures are readily available for cisgender inmates but are not similarly available for inmates with gender dysphoria. Such disparate treatment, Plaintiff argues, deprives him of equal protection under the Fourteenth Amendment.

Affording a liberal construction to the SAC, Plaintiff states a cognizable due process claim against Defendant Macomber, the only Defendant with authority to implement CDCR policy and subject to injunctive relief.

### E. Injunctive Relief

Plaintiff also seeks injunctive relief requiring Defendants to provide Plaintiff with SRS to treat his gender dysphoria. However, since Defendants Leslie Taylor, Robert Mitchell, Stephanie Neumann, Tristan Buzzini, Molli Rudich, and Shama Chaiken may only be sued in their individual capacities for damages, the Court cannot grant injunctive relief against them in this section 1983 action. Therefore, the Eighth Amendment claims against them may not proceed.

### F. Declaratory Relief

Plaintiff has requested declaratory judgment, but such relief is unnecessary. Like other forms of equitable relief, the Court has judicial discretion to grant a declaratory judgment, exercised in the public interest. *Johnson v. Torres*, No. 1:22-cv-01457-BAM (PC), 2023 WL 1823605, at *4 (E.D. Cal. Feb. 8, 2023) (quoting *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948)), *F.&R. adopted*, 2022 WL 782342 (E.D. Cal. Mar. 15, 2022). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and

settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985) (citations omitted).

If this action reaches trial and a verdict is returned in Plaintiff's favor, then that verdict will be a finding that Plaintiffs constitutional rights were violated. *Johnson*, 2023 WL 1823605 at *4. Because such relief is unnecessary in this case, the Court should decline to exercise its discretion to enter declaratory judgment.

## V.     CONCLUSION

Plaintiff's second amended complaint raises a Fourteenth Amendment due process claim against CDCR Secretary Jeff Macomber. As to Defendants Leslie Taylor, Robert Mitchell, Stephanie Neumann, Tristan Buzzini, Molli Rudich, and Shama Chaiken, the second amended complaint fails to state a claim on which relief may be granted. The Court will grant Plaintiff an opportunity to file a third amended complaint. *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). If Plaintiff does not wish to amend, he may instead file a notice of voluntary dismissal, and the action will be terminated by operation of law. Fed. R. Civ. P. 41(a)(1)(A)(i). Alternatively, Plaintiff may forego amendment and notify the Court that he wishes to stand on his complaint. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1064–65 (9th Cir. 2004). If the last option is chosen, the Court will issue findings and recommendations to dismiss the complaint without leave to amend, Plaintiff will have an opportunity to object, and the matter will be decided by a district judge.

If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. *Iqbal*, 556 U.S. at 677–78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555 (2007)). Plaintiff should note that although he has been granted the opportunity to amend his complaint, it is not for the purposes of adding new and unrelated claims. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully review this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is again advised that Local Rule 220 requires that an amended complaint

be complete in and of itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  Once an amended complaint is filed, the original complaint no longer serves a function in the case.  *Id.*  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly titled, in bold font, "Third Amended Complaint," reference the appropriate case number, and be an original signed under penalty of perjury.  Plaintiff's second amended complaint should be brief.  Fed. R. Civ. P. 8(a).  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

Accordingly, it is ORDERED:

1. Plaintiff is granted leave to file a third amended complaint;
2. The Clerk's Office is directed to send Plaintiff a civil rights complaint form; and
3. **Within thirty (30) days** from the date of service of this order, Plaintiff must file either a third amended complaint curing the deficiencies identified by the Court in this order, a notice of voluntary dismissal, or a notice of election to stand on the second amended complaint as screened.

**If Plaintiff fails to comply with this order, the Court will recommend that this action proceed only on the claims found cognizable herein and that all other claims be dismissed with prejudice.**

IT IS SO ORDERED.

Dated:   **February 17, 2023**                    _____
                                                  UNITED STATES MAGISTRATE JUDGE

14