UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIC (AKA DIAMOND) VARGAS,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>Defendants. | Case No.: 1:20-cv-000083-JLT-CDB (PC)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO STAY PROCEEDINGS**<br><br>(Doc. 63) |

Plaintiff Dominic Vargas is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's claims under the Eighth and Fourteenth Amendments.

**I.     INTRODUCTION**

On June 27, 2024, Defendants moved for a stay of these proceedings. (Doc. 63.) Plaintiff filed an opposition on July 22, 2024. (Doc. 67.)

*Defendants' Motion*

Defendants argue a stay of these proceedings for 120 days "or whatever length of time the Court deems appropriate" will allow time for Plaintiff to submit to phalloplasty preoperative procedures, including a hysterectomy. (Doc. 63 at 5.) Following that procedure, Defendants indicate they would provide the Court with an update concerning Plaintiff's medical status and

1  will likely request an order continuing the stay until the phalloplasty procedure has been
2  performed. (*Id.*) Defendants contends a stay of the proceedings and discovery is appropriate given
3  the action's procedural posture "and the fact that Plaintiff's requested relief for [gender affirming
4  surgery] has been approved and is pending completion." (*Id.*) Defendants state a discovery and
5  scheduling order has not yet been issued,[1] and indicate Plaintiff has received a mammoplasty
6  procedure, and, in preparation for a phalloplasty, Plaintiff must undergo a hysterectomy and
7  electrolysis.[2] (*Id.*) Defendants assert the hysterectomy is tentatively scheduled for July 2024.
8  (*Id.*) Further, Defendants maintain the "timeframe within which the phalloplasty surgery will be
9  scheduled is determined by factors outside CDCR's control," noting a need for Plaintiff to
10 recover from the hysterectomy and to complete electrolysis, and the outside treating surgeon's
11 ability to schedule and perform the surgery. (*Id.* at 5-6.) Defendants contend that once surgery is
12 completed, Plaintiff's claim for injunctive relief will be moot. (*Id.* at 6.) Defendants maintain
13 discovery and litigation of the injunctive relief claim would be a waste of resources "because
14 Plaintiff's approved request is pending completion." (*Id.*) Additionally, they assert a stay of these
15 proceedings would promote judicial economy and efficiency by eliminating the risk of moot
16 proceedings. (*Id.*)

17      Next, Defendants note that Plaintiff's operative complaint includes a claim for declaratory
18 relief concerning the constitutionality of CDCR's gender affirming surgery (GAS) policies. (Doc.
19 63 at 6.) They argue further litigation of that claim, including whether Plaintiff has standing to
20 pursue the claim after completion of GAS, will likely require further briefing concerning whether
21 a case or controversy exists justifying declaratory relief. (*Id.*) They request this action be stayed at
22 least 120 days to narrow those issues. (*Id.*)

23      Defendants' motion is supported by the Declaration of E. Joelson, M.D. (Doc. 63-1.) Dr.
24 Joelson is a Chief Physician and Surgeon for California Correctional Health Care Services

---

[1] In fact, the Court issued its Discovery and Scheduling Order on May 9, 2024, prior to the filing of Defendants' motion. (*See* Doc. 61.)

[2] In a filing dated August 7, 2024, Plaintiff acknowledges a hysterectomy had been performed and electrolysis was to occur on August 8, 2024. (*See* Doc. 69.)

(CCHCS) and is the Chair of the Gender Affirming Surgery Review Committee (GASRC). (*Id*. at 1, ¶ 2.) As Chair, Dr. Joelson is familiar with the process for reviewing GAS requests. (*Id*.) Following a request by Plaintiff in August 2019 for GAS, including bilateral reduction mammoplasty, hysterectomy, salpingo-oophorectomy, and procedures for phalloplasty, to include urethroplasty, scrotoplasty, and placement of testicular prostheses, on October 29, 2019, GASRC recommended to the Statewide Medical Authorization Review Team (SMART) that Plaintiff's request be denied due to a mental health contraindication. (*Id*. at 2, ¶ 3.) SMART denied Plaintiff's request on November 19, 2019. (*Id*.) Thereafter, Plaintiff submitted another request in October 2020. (*Id*. at 2, ¶ 4.) GASRC recommended to SMART that a reduction mammoplasty be approved and that masculinizing bottom surgeries be denied pending full assessment and control of Plaintiff's kidney disease. (*Id*.) SMART granted Plaintiff's request for mammoplasty on January 5, 2021. (*Id*.) The mammoplasty was performed by Dr. Thomas Satterwhite on October 3, 2022, and Plaintiff continues to receive treatment for bilateral nipple deformities. (*Id*., ¶ 5.) In April 2022, Plaintiff submitted a request for the following procedures: hysterectomy, salpingo-oophorectomy, phalloplasty, urethroplasty, scrotoplasty, and placement of testicular prostheses. (*Id*., ¶ 6.) Finding no medical contraindications, those procedures were approved on June 6, 2023. (*Id*.)

Dr. Joelson states Plaintiff must undergo a hysterectomy and electrolysis in preparation for a phalloplasty. (Doc. 63-1 at 2, ¶ 7.) The hysterectomy is tentatively planned for July 2024 and Plaintiff has consulted with a physician regarding the need for electrolysis, but the process has not yet begun. (*Id*. at 2-3, ¶ 7.) Dr. Joelson states there "are limited contractors who perform electrolysis, and not all of them do electrolysis on the genital region," meaning the eight to 12 electrolysis sessions required "could take one to two years to complete." (*Id*. at 3, ¶ 7.)

Dr. Joelson indicates that because of the complexity of phalloplasty and its high complication rate, CCHCS has encountered difficulty finding a surgeon willing to perform the procedure for CDCR patients. (Doc. 63-1 at 3, ¶ 8.) Difficulties include significant planning and preparation, and a prison setting creating challenges related to transportation, scheduling, and post-surgical care. (*Id*.) In late 2022, CCHCS learned Michael Safir, M.D., a physician located in

1   Los Angeles, was one such potential surgeon. (*Id*., ¶ 9.) After extensive discussions, including
2   locating credential appropriate surgery centers and long-term acute care facilities to provide three
3   to four weeks of post-surgical care, in June 2024, CCHCS contracted with Dr. Safir to perform
4   phalloplasties for CDCR patients. (*Id*.) Finally, Dr. Joelson states CDCR is unable to estimate a
5   date for Plaintiff's phalloplasty due to the many pre-phalloplasty procedures required,
6   unanticipated institutional issues that may cause delay, and the potential for delays associated
7   with scheduling Plaintiff's surgery with an outside non-CDCR surgery center. (*Id*., ¶ 10.)

             *Plaintiff's Opposition*

9       Plaintiff opposes Defendants' motion arguing "CDCR is not compliant and [his] claims
10  are not moot." (Doc. 67 at 1.) He maintains CDCR is delaying the necessary medical procedures
11  and notes it "took years to gain approval for the hysterectomy to be performed." (*Id*.) Plaintiff
12  contends he has been advised "there is a delay in scheduling electrolysis which will risk delaying
13  the phalloplasty procedure." (*Id*.) He contends Dr. Joelson's statement that "the delay is due to
14  'limited contractors who perform electrolysis and not all of them do electrolysis on the genital
15  region'" is "not logical" because Plaintiff does not require electrolysis in "any genital areas." (*Id*.)
16  Rather, Plaintiff maintains the electrolysis "is for the thigh which is where the skin will be
17  harvested for the phalloplasty procedure." (*Id*.) Plaintiff contends the "fact that the chair of the
18  [GASRC] is unaware of the medical orders and that a female to male transgender does not get
19  genital electrolysis is a concern but speaks to one of the key claims in [his lawsuit: that] CDCR is
20  treating those transitioning into females different than those transitioning into males." (*Id*.)

21      Plaintiff argues the fact procedures are now being approved does not support a stay. (Doc.
22  67 at 1.) He maintains it "will be months to years before CDCR is fully compliant, especially with
23  the continuing delays with medical orders." (*Id*.) Citing to two CDCR inmate patients who are
24  transitioning from male to female and who have not encountered delays for electrolysis treatment,
25  as compared to another CDCR patient like Plaintiff who is transitioning from female to male and
26  has also encountered "significant delays in getting procedures," Plaintiff questions Defendants'
27  assertion that delays are unavoidable. (*Id*. at 1-2.) Plaintiff states Defendants' argument "that
28  another delay was caused by [his] chronic kidney disease … does not [with]stand scrutiny"

because he has received chronic care for that condition for years and is assessed several times per year. (*Id*. at 2.)

Next, Plaintiff contends the "discovery phase of this case which is already scheduled will reveal these facts through the Q&A forms which is being substituted for depositions that would be performed by an attorney." (Doc. 67 at 2.) He states the "Q&A will allow the inmates to detail their treatment so that [he] may highlight the discrepancies in their treatment versus others" and allow "the medical staff to confirm the status" of Plaintiff's chronic illnesses, including chronic kidney disease. (*Id*.) Finally, Plaintiff contends the "Q&A will allow [him] to ask and counter the [Defendants'] explanation for why procedures were delayed and why their treatment was handled in star[k] contrast to how other gender reassignment cases were handled by CDCR across the department and not just within [the Central California Women's Facility]." (*Id*.)

## II. DISCUSSION

### *Applicable Legal Standards*

The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co*., 299 U.S. 248, 254-255 (1936). To evaluate whether to stay an action, the Court must the weigh competing interests that will be affected by the grant or refusal to grant a stay, including: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55)).

The party seeking a stay "bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255). "If there is even a fair possibility that the stay ... will work damage to someone else," the party seeking the stay "must make out a clear case of hardship or inequity." *Landis,* 299 U.S. at 255. The decision whether to grant or deny a stay is committed to the discretion of the Court. *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). If a stay is especially long or its term is indefinite, a

greater showing is required to justify it. *Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000). The Court should "balance the length of any stay against the strength of the justification given for it." *Id*.

### *Analysis*

Here, the Court has considered the parties' positions regarding possible damage which may result from granting a stay, the hardship or inequity a party may suffer in being required to go forward, and the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law. On balance, the Court will deny the request for a stay of these proceedings.

First, Plaintiff's efforts to obtain GAS have been extensive and lengthy. The fact the mammoplasty and hysterectomy procedures have now been completed, and that Plaintiff is apparently now undergoing, or has undergone, electrolysis, still leaves the phalloplasty. While Plaintiff has been approved for phalloplasty, Defendants cannot provide a time estimate for its completion, and the complexities and potential for significant delay of that procedure cannot be overlooked. The possible damage to Plaintiff weighs against granting a stay of these proceedings. *CMAX, Inc.*, 300 F.2d at 268; *Dependable Highway Exp.*, 498 F.3d at 1066; *see Macias v. California Department of Corrections and Rehabilitation*, No. 1:18-cv-01730-NONE-JLT (PC), 2021 WL 4991646, at *1 (E.D. Cal. Oct. 27, 2021) ("the fact Plaintiff has received approval for a bilateral reduction mammoplasty 'does not "establish[] that there is no effective relief remaining that the court could provide"'").

Second, the Court finds any hardship or inequity Defendants would suffer without a stay does not outweigh the potential damage presented to Plaintiff. While Defendants will be required to continue to engage in discovery, defending this lawsuit, in its present posture, does not constitute a clear case of hardship or inequity. *CMAX, Inc.*, 300 F.2d at 268; *Landis,* 299 U.S. at 255.

Third, the Court is not persuaded that a stay at this juncture benefits the orderly course of justice. While Plaintiff has now undergone several procedures relating directly to the relief he seeks, the fact the phalloplasty has only been approved, where ensuring the surgery is completed

6

may take years—particularly where it took years to locate a single available surgeon and the necessary facilities—serves to complicate the issue of resolving the claims in this matter. *CMAX*, 300 F.2d at 268.

Lastly, and significantly, the length of any stay sought is unclear. Defendants seek a stay of 120 days to allow time for Plaintiff to submit to phalloplasty preoperative procedures, including a hysterectomy. Further, Defendants indicate they would seek to extend the stay beyond that point concerning the phalloplasty procedure. The "phalloplasty preoperative procedures" are now complete (hysterectomy) or underway (electrolysis). However, as noted above, the phalloplasty procedure itself has not yet been scheduled and given the complexities involved with scheduling that procedure and seeing it completed, any stay appears certain to be especially long or indefinite. *Yong*, 208 F.3d at 1119. That uncertainty weighs against a stay of these proceedings.

In sum, this Court concludes a stay of these proceedings is not warranted.

### III.    CONCLUSION AND ORDER

Accordingly, the Court **HEREBY ORDERS** that Defendants' motion to stay these proceedings (Doc. 63) is **DENIED**.

IT IS SO ORDERED.

Dated:   **September 13, 2024**                           _____
                                                                               UNITED STATES MAGISTRATE JUDGE