UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIC (AKA DIAMOND) VARGAS,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>Defendants. | Case No.: 1:20-cv-000083-JLT-CDB (PC)<br><br>**ORDER DENYING PLAINTIFF'S REQUEST FOR SUBPOENAS**<br><br>(Doc. 65)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR 90 DAY EXTENSION OF TIME AND FOR LEAVE TO FILE AN AMENDED COMPLAINT**<br><br>(Doc. 69) |

Plaintiff Dominic aka Diamond Vargas is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.     INTRODUCTION**

On July 8, 2024, Plaintiff filed a Request for Subpoenas. (Doc. 65.) Defendants filed an objection to Plaintiff's request on July 12, 2024. (Doc. 66.)

On August 12, 2024, Plaintiff filed a document titled "Request for 90 Days Extention [sic] and Request Leave to File Fourth Amended Complaint." (Doc. 69.) Defendants filed an opposition on August 15, 2024. (Doc. 70.)

//

//

## II.     DISCUSSION

### *Request for Subpoenas*

In her request, Plaintiff asks the Court to issue a subpoena to the California Department of Corrections and Rehabilitation (CDCR) concerning body camera footage from April 26, 2024. (Doc. 65.) Specifically, Plaintiff seeks footage from Correctional Officer Rawlings's camera capturing dialogue between the officer and defense counsel Juliet Lompa, stating it "does not match CDCR's version" of events as described in a declaration defense counsel filed on May 6, 2024. (*Id*.) Further, Plaintiff asks the Court to issue a subpoena to defense counsel for the audio recording concerning a call involving ADR proceedings. (*Id*.) Plaintiff maintains subpoenas are necessary because CDCR only retains footage for 90 days. (*Id*.)

Defendants oppose Plaintiff's request. (Doc. 66.) Defendants contend Plaintiff's request is completely unrelated to the issues raised in the action and are a waste of judicial resources. (*Id*. at 1.) Plaintiff is asserting Defendants violated the Eighth Amendment by denying her gender affirming surgery, and thus were deliberately indifferent to her serious medical needs. (*Id*.) Those claims are unrelated to the allegations Plaintiff raised in her Notice of Misconduct and, therefore, are not limited to "'nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,'" citing Fed. R. Civ. P. 26(b)(1). (*Id*. at 1-2.) Further, Defendants maintain Plaintiff has filed a separate complaint concerning those claims rendering any further action unnecessary. (*Id*. at 2.) Additionally, Defendants contend that even were the request granted, Plaintiff has "no means of playing the video." (*Id*.) Finally, Defendants state defense counsel does not have an audio recording of the April 26, 2024, phone call with Plaintiff. (*Id*.) Ms. Lompa's supporting declaration[1] states she spoke with the litigation coordinator at the Central California Women's Facility (CCWF) on June 13, 2024, and was advised he had been contacted by the California State Bar concerning a complaint by Plaintiff. (*Id*. at 3, ¶ 2.) The litigation coordinator explained an investigator requested body camera video footage of a conversation between she and Officer Rawlins from April 26, 2024. (*Id*.) Further, Ms. Lompa

---

[1] The declaration incorrectly references the year 2023 in two instances. Nevertheless, it is clear the events giving rise to these pleadings occurred in 2024.

2

1  states she did not record the April 26, 2024, call between she and Plaintiff and she is not aware of

2  the existence of such a recording "other than what was recorded on Officer Rawlings' body

3  camera." (Id., ¶ 3.)

4                                    Relevant Background

5        On May 3, 2024, Plaintiff filed a "Notice of Misconduct," indicating that on April 26,

6  2024, she was advised by Correctional Officer Rawlings that she had an attorney visit. (Doc. 57.)

7  Rawlings informed Plaintiff "Juliet Lompa" was his attorney. (*Id*.) When Rawlings connected the

8  call to the attorney, he stated, "This is Diamond Vargas your client on the phone, I will be

9  stepping out." (*Id*.) Plaintiff contends Ms. Lompa never advised her she represented Defendants.

10 (*Id*.) They spoke for 40 to 45 minutes, and Plaintiff was left with the impression Ms. Lompa

11 represented her. (*Id*.) Plaintiff states she spoke freely about the case and at the end of the

12 conversation asked what Ms. Lompa thought their chances were. (*Id*.) Plaintiff asserts Ms. Lompa

13 replied, "'I'm not your attorney.'" She maintains Ms. Lompa "completely misrepresented

14 herself." (*Id*.) By not notifying Plaintiff "who she was," Plaintiff asserts Ms. Lompa violated Rule

15 8.3(a) of the Rules of Professional Conduct. (*Id*. at 2.) Further, Plaintiff states that at the time of

16 the call she had recently filed a motion for the appointment of counsel and did not know the

17 motion had been denied. (*Id*.) She asserts Ms. Lompa advised her the motion had been denied and

18 that she received the Court's order the following day. (*Id*.) Plaintiff states she is informing the

19 Court "of what has happened Ms. [Lompa] said she felt uncomfortable I believe that is a

20 [testament] of wrongdoing." (*Id*.)

21       Defendants filed a response to Plaintiff's notice on May 6, 2024. (Doc. 58.) Defendants

22 assert that defense counsel "clearly identified herself as a Deputy Attorney General employed

23 with the Office of the Attorney General." (*Id*. at 1.) Defendants further assert Juliet Lompa "never

24 told Plaintiff she represented [her], and she immediately told [Plaintiff] she was not [her]

25 attorney" when Plaintiff suggested it. (*Id*. at 1-2.) Defendants maintain Plaintiff was mistakenly

26 informed that she had a telephone call with her attorney "as a result of an error by staff at

27 CCWF." (*Id*. at 2.)

28       Defendants' response is supported by the Declaration of Juliet Lompa. (Doc. 58 at 3-4.)

1  Specifically, Ms. Lompa declares she contacted the litigation coordinator at CCWF on April 18,
2  2024, to request a teleconference with Plaintiff "to discuss whether referral to early ADR would
3  be productive." (*Id*. at 3, ¶ 3.) Ms. Lompa clearly identified herself as a Deputy Attorney General
4  employed with the Office of the Attorney General. (*Id*.)

5      Ms. Lompa declares that on April 22, 2024, the CCWF litigation coordinator's assistant
6  confirmed a teleconference for Friday, April 26, 2024, at 9 a.m. (Doc. 58 at 3-4, ¶ 3.) Next, Ms.
7  Lompa states she filed a notice of appearance in this action on April 24, 2024, and requested a 30-
8  day extension of time to file "a Notice of Opt-Out of Post-Screening Alternative Dispute
9  Resolution (ADR)." (*Id*. at 4, ¶ 4.)

10      Ms. Lompa declares that on April 26, 2024, she was contacted by a correctional officer at
11  CCWF "who stated something to the affect, 'I have your client Diamond Vargas here and I will
12  be stepping out of the room.'" (Doc. 58 at 4, ¶ 5.) Ms. Lompa declares she "immediately
13  responded, 'I am not [her] attorney; I am opposing counsel.'" (*Id*.) She then stated that she needed
14  to connect her paralegal before starting the call and the officer acknowledged Ms. Lompa would
15  be adding her paralegal, S. Gibson. (*Id*.)

16      Ms. Lompa declares that once Ms. Gibson was on the call, she introduced herself to
17  Plaintiff and explained the purpose of her call. (Doc. 58 at 4, ¶ 6.) Specially, Ms. Lompa told
18  Plaintiff she wanted to speak about whether Plaintiff thought ADR would be productive. (*Id*.)
19  Plaintiff explained her medical status in detail, the related grievances filed, the surgeries still
20  needed, and indicated she was unwilling to dismiss the action before the necessary surgeries were
21  completed. (*Id*.) Plaintiff also inquired about monetary compensation and Ms. Lompa replied that
22  it did not appear Plaintiff asked for monetary compensation in the complaint, but that she "would
23  need to take any such demand back to [her] client." (*Id*.) Plaintiff then asked Ms. Lompa what
24  happened next and when she would hear from Ms. Lompa again. (*Id*.) Ms. Lompa declares she
25  responded that discovery would likely start. (*Id.*) She states Plaintiff "stated something about" not
26  having Ms. Lompa's contact information and about Ms. Lompa being Plaintiff's attorney. (*Id*.)
27  Ms. Lompa declares that "was the first time" she became aware that Plaintiff "was potentially
28  confused regarding who" Ms. Lompa represents. (*Id.*) She advised Plaintiff, "I am not your

attorney. I am opposing counsel." (*Id.*) Ms. Lompa declares Plaintiff was confused because she thought the Court had granted her recent request to appoint counsel. (*Id.*) Ms. Lompa then advised Plaintiff that the Court had denied her request without prejudice. (*Id.*) Plaintiff advised defense counsel she had not received the order. (*Id.*) Plaintiff stated to defense counsel that "the counselor told" her she had a call "with [her] attorney this morning." (*Id.*) Ms. Lompa declares she explained to Plaintiff that when the officer who connected the call referred to her as Plaintiff's attorney, she immediately corrected the officer and stated she was opposing counsel. (*Id.*) Ms. Lompa apologized to Plaintiff about the mistake and stated she felt "badly about the confusion." (*Id.*) She declares the call lasted a total of 23 minutes. (*Id.*)

Next, Ms. Lompa declares that "[a]t no time" did she tell Plaintiff she was her attorney or that she was calling to discuss Plaintiff's case. (Doc. 58 at 5, ¶ 7.) She further declares that "[a]t no time" did she say anything to Plaintiff she believes would given Plaintiff the impression she was Plaintiff's attorney. (*Id.*) Had she believed Plaintiff was under that impression, Ms. Lompa declares she "would have immediately made clear that was not the case." (*Id.*) Additionally, Ms. Lompa declares that "[a]t no time" did Plaintiff disclose to her any privileged information or information not included in the relevant medical or correctional documents available to her as opposing counsel. (*Id.* at 5, ¶ 8.) Lastly, Ms. Lompa declares that after she received Plaintiff's misconduct notice, she contacted the litigation coordinator at CCWF, who confirmed that Plaintiff "was mistakenly told" she had a call with her attorney on that date. (*Id.* at 5, ¶ 9.) The litigation coordinator also advised Ms. Lompa that "all involved staff had received training to avoid this mistake in the future." (*Id.*)

The Applicable Legal Standards and Analysis

Federal Rule of Civil Procedure 45 governs subpoenas, which are the mechanism for obtaining discovery and testimony from non-parties. A subpoena may be issued by the Court, the Clerk of Court, or an attorney as an officer of the Court for witnesses and documents found within its jurisdiction. *See* Fed. R. Civ. P. 45(a)(2), (3).

Rule 26(b)(1) of the Federal Rules of Civil Procedure establishes the scope of discovery, stating in pertinent part:

5

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b). These standards mean that the Court may grant a request by Plaintiff to issue a Rule 45 subpoena to a properly identified non-party to discover information that is relevant to the party's claims or defenses, is not burdensome, and is not within Plaintiff's reasonable access, upon a sufficient showing of the importance of the information.

Here, the Court will deny Plaintiff's request. The information Plaintiff seeks is not relevant to her claims in this action, the importance of the issues at stake, the amount in controversy, the parties' resources, or the importance of resolving discovery issues. Further, the burden or expense involved outweighs any benefit.

### *Request for Extension of Time and Leave to File Amended Complaint*

On August 12, 2024,[2] as noted above, Plaintiff sought a 90-day extension of time and the Court's leave to file a fourth amended complaint. (Doc. 69.) Plaintiff states the deadline to amend her complaint is August 9, 2024. (*Id*. at 1.) Further, Plaintiff notes she received the Discovery and Scheduling Order the "week of May 12th." (*Id*.) In late-June, Plaintiff received Defendants' motion concerning a stay and "responded with [her] objections," but had not yet received an order from the Court. (*Id*.) In light of the "change in personnel [and] the granting in part [of her] SRS [sexual reassignment surgery] procedures," Plaintiff believes she needs to file a fourth amended complaint "to provide updates and clarifications of each defendant in the initial civil rights violation and the ongoing violations." (*Id*.)

Plaintiff indicates she has received a hysterectomy since her last filing and that electrolysis was scheduled for the following day. (Doc. 69 at 1.) She contends that "does not change the fact that [her] case is being treated different than inmate patients who are transitioning

---

[2] The pleading is dated and signed August 7, 2024.

6

1  from male to female," nor does it "change the fact that [her] procedures are unnecessarily
2  delayed" or that she "was deformed because CDCR medical staff was not properly taught how to
3  attend wounds with skin grafting." (*Id*. at 1-2.) Neither does it "change the fact that their
4  negligence is subjecting [her] to more surgery and delaying [her] full transformation." (*Id*. at 2.)

Plaintiff contends her journey has lasted five years and she still has "a year or more of procedures to go." (Doc. 69 at 2.) She states she has spent "several hundred hours on legal research and filings without legal assistance" and hundreds of dollars on filing fees, copies, postage, and stationery. (*Id*.) She states that "[n]ow CDCR wants to stay proceedings claiming they are compliant. They are not compliant and are still violating my civil rights." (*Id*.) Plaintiff asks the Court to deny the motion,[3] to extend the deadline for the filing of an amended complaint by 90 days, and for leave to file a fourth amended complaint. (*Id*.)

Defendants oppose Plaintiff's requests. (Doc. 70.) Defendants argue that Plaintiff did not submit an amended complaint by the August 9, 2024, deadline, and that Plaintiff's request should be denied on that basis. (*Id*. at 4.) Defendants contend Plaintiff's request does not meet the requirements of Rule 15 of the Federal Rules of Civil Procedure. (*Id*.) Defendants argue Plaintiff's motion should be denied because four of the five determining factors weigh against granting leave to amend. (*Id*.)

Specifically, Defendants assert Plaintiff has failed to explain why she did not submit an amended pleading on or before August 9, 2024, or why she should be permitted to add new claims and parties at this late date. (Doc. 70 at 4-5.) Second, Defendants assert allowing Plaintiff to file a fourth amended complaint would prejudice them because it would delay litigation and introduce unrelated claims. (*Id*. at 5.) Defendants maintain the statements by Plaintiff concerning being treated differently, that she was deformed, and that negligence has subjected her to more surgeries and delayed her full transformation "seem to be a new Fourteenth Amendment claim and new state law claims against unknown defendants." (*Id*.) They maintain the proposed amendments would require screening by the Court and service of any new defendants. (*Id*.) Third,

---
[3] This Court issued its Order Denying Defendants' Motion to Stay Proceedings on September 13, 2024. (*See* Doc. 72.)

7

Defendants contend amendment would be futile because the proposed claims would be improperly joined. (*Id.*) The operative complaint alleges Defendants violated Plaintiff's Eighth Amendment rights by denying her SRS surgery. (*Id.*) Defendants assert Plaintiff acknowledges SRS has been approved and note that the claims she seeks to add concern unreasonable delays and whether the treatment course falls below the standard of care. (*Id.*) Further, Defendants state Plaintiff "seems to be seeking the Court's intervention in the day-to-day operations of the CDCR or its medical facilities." (*Id.*) Because Plaintiff failed to provide a proposed amended complaint, Defendants cannot "fully analyze whether Plaintiff's proposed amendments can be properly joined" or whether "they would be sufficient to state a potentially cognizable claim, or alternatively, that their addition would be futile." (*Id.*) Fourth, Defendants argue Plaintiff has received numerous opportunities to amend her complaint and to add facts and claims but did not use those opportunities. (*Id.* at 5-6.)

Lastly, Defendants ask the Court to deny Plaintiff's requests for a 90-day extension of time and for leave to file a fourth amended complaint. (Doc. 70 at 6.) Alternatively, and if the Court is inclined to grant Plaintiff's requests, Defendants assert Plaintiff should be required to "formally move to amend and include a copy of the proposed amended complaint" to allow them to substantively address it. (*Id.*) Defendants also request the Court screen any amended complaint pursuant to 28 U.S.C. § 1915A and issue an order that their response is not required until the amended complaint is screened "and that any new Defendant not be required to respond until they are appropriately served with summons and complaint or submits a service waiver." (*Id.*)

The Applicable Legal Standards and Analysis

Rule 15 of the Federal Rules of Civil Procedure provides, in pertinent part:

**(a) Amendments Before Trial.**

   **(1) Amending as a Matter of Course.** A party may amend its pleading once as a matter of course no later than:

    (A) 21 days after serving it, or

    (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is

8

>earlier.
>      **(2) Other Amendments**. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Initially, the Court notes Plaintiff did not submit a proposed fourth amended complaint with the August 12, 2024, motion as required by the Court's Local Rules. *See* Local Rule 137(c) ("If filing a document requires leave of court, such as an amended complaint after the time to amend as a matter of course has expired, counsel shall attach the document proposed to be filed as an exhibit to moving papers seeking such leave .... If the Court grants the motion, counsel shall file and serve the document in accordance with these Rules ...."). Instead, Plaintiff lodged a fourth amended complaint on September 16, 2024 (Doc. 73), after Defendants filed an opposition to the motion to amend.

Regardless of the procedural defect for a failure to include a proposed fourth amended complaint with the motion, even a cursory review of the lodged fourth amended complaint reveals Plaintiff's motion should be denied.

Plaintiff contends she believes she needs to file a fourth amended complaint "to provide updates and clarifications of each defendant in the initial civil rights violation and the ongoing violations." The Court finds such "updates and clarifications" to be unnecessary and a review of the lodged fourth amended complaint reveals that to be the case. All parties and the Court are aware of the factual and procedural history of this action and are familiar with the status of the SRS surgery and what procedures remain to be completed. Amending the complaint to add those "updates" would amount to a tremendous waste of this Court's already taxed resources.

Significantly too, the proposed fourth amended complaint asserts Plaintiff is suing all named defendants in their individual and official capacities. (Doc. 73 at 1:19-24.) But as Plaintiff has repeatedly been advised, the "Eleventh Amendment bars suits for money damages in federal court against state officials in their official capacity. [Citation.] A claim for prospective injunctive relief against a state official is not barred by the Eleventh Amendment provided the official has authority to implement the requested relief. [Citations.]" (*See* Doc. 17 at 6.) And "Jeff Macomber, Secretary of CDCR, is the only defendant alleged to have the responsibility and authority to

1  implement the medical care policies governing [] CDCR. Therefore, he may be sued in his
2  official capacity, even though he had no personal involvement in the alleged constitutional
3  violations. All other defendants may only be sued in their individual capacities." (*See* Doc. 30 at
4  8.) Permitting the filing of the lodged fourth amended complaint would thus necessitate findings
5  and recommendations to dismiss the action, on that basis at a minimum, further delaying an
6  action that has been pending in this Court for more than four and a half years.

7  Additionally, the lodged fourth amended complaint names "Ralf Diaz" (Doc. 73 at 4) and
8  "Kathleen Allison" (*id*. at 6) as defendants. Both formerly held the position of Secretary of the
9  California Department of Corrections and Rehabilitation. However, as explained in this Court's
10 third screening order, Ralph Diaz was replaced by Kathleen Allison and Jeff Macomber replaced
11 Ms. Allison. Plaintiff was advised: "Under Rule 25 of the Federal Rules of Civil Procedure, when
12 a public officer ceases to hold office, the officer's successor is automatically substituted as a
13 party. Fed. R. Civ. P. 25(d)." (*See* Doc. 30 at 4, n.2.) Thus, there is no reason to add former public
14 officers as defendants in this action.

15 Next, the Court notes the lodged fourth amended complaint seeks, in part, the following
16 relief: "Plaintiff is asking that the Defendants be made to perform procedures in a more timely
17 fashion and not the one-year between the approval and procedures that is the current average."
18 (Doc. 73 at 21:23-26.) Defendants concern that Plaintiff "seems to be seeking the Court's
19 intervention in the day-to-day operations of the CDCR or its medical facilities," is well taken. As
20 more fully discussed in its Order Denying Defendants' Motion to Stay Proceedings, for several
21 reasons Defendants cannot provide a time estimate for the completion of the remaining surgeries
22 to be performed. (*See* Doc. 72 at 3-4.) And the Court cannot simply order non-parties, like
23 contracted physicians and surgeons, to perform procedures "in a more timely fashion." *Zepeda v.*
24 *INS*, 753 F.2d 719, 727-28 (9th Cir. 1983) (the court may not attempt to determine the rights of
25 persons not before it). Moreover, requests for prospective relief are further limited by 18 U.S.C. §
26 3626(a)(1)(A) of the Prison Litigation Reform Act, which requires the Court find that the "relief
27 [sought] is narrowly drawn, extends no further than necessary to correct the violation of the
28 Federal Right, and is the least intrusive means necessary to correct the violation of the Federal

10

Right." As noted above, the Court finds Plaintiff's request here is not "narrowly drawn." Nor does it appear to be the "least intrusive means necessary correct the violation" alleged. Without expressly deciding that issue, it appears to the Court from the pleadings filed in this action, that the delays associated with completing all SRS procedures are not of Defendants' making. Rather, the delays appear to be associated with findings physicians or surgeons willing to perform the required procedures, entering into agreements with those individuals, and scheduling the procedures in accordance with their availability. Requiring more would certainly be intrusive.

In evaluating a motion to amend the complaint, the Court considers whether amendment (1) would prejudice the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. *Eminence Capital LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003), citing *Foman v. Davis*, 371 U.S. 178 (1962). This circuit accords the greatest weight to "the consideration of prejudice to the opposing party," the prejudice-showing burden resting on the opposing party. *Eminence Capital*, 316 F.3d at 1052. "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id*.

Here, the Court finds that granting further leave to amend in this instance should not be granted because the factors to be evaluated weigh against it. There is no question that further amendment would prejudice not only the opposing party, but also unduly burden this already significantly burdened Court, and would certainly produce an undue delay in litigation which has entered its fourth year. And, while leave to further amend has not been sought in bad faith, it appears that the proposed amendments are futile in the sense they are either unnecessary (updating or clarifying facts) or improper (individual v. official capacity; unnecessary parties). *Eminence Capital*, 316 F.3d at 1052.

Finally, because the Court will deny Plaintiff's motion for leave to file a fourth amended complaint, it will deny the related request to extend the deadline for doing so by 90 days. The deadlines provided for in the Discovery and Scheduling Order issued May 9, 2024, will remain unchanged.

### III. CONCLUSION AND ORDER

Accordingly, based upon the foregoing, the Court **ORDERS**:

1. Plaintiff's request for subpoenas (Doc. 65) is **DENIED**; and
2. Plaintiff's motion or request to file a fourth amended complaint (Doc. 69) is **DENIED**.

IT IS SO ORDERED.

Dated: **September 25, 2024**

UNITED STATES MAGISTRATE JUDGE