UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIC (AKA DIAMOND) VARGAS,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>Defendants. | Case No.: 1:20-cv-000083-JLT-CDB (PC)<br><br>**AMENDED ORDER DENYING PLAINTIFF'S REQUEST FOR SUBPOENAS**<br><br>(Doc. 65)<br><br>**AMENDED ORDER DENYING PLAINTIFF'S MOTION FOR 90 DAY EXTENSION OF TIME AND FOR LEAVE TO FILE AN AMENDED COMPLAINT**<br><br>(Doc. 69) |

Plaintiff Dominic Vargas is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

The Court issues these amended orders pursuant to Rule 60(a) of the Federal Rules of Civil Procedure,[1] and in so doing vacates its previous orders (Doc. 74) issued September 26, 2024. *See* (Doc. 78.)

**I.      INTRODUCTION**

On July 8, 2024, Plaintiff filed a Request for Subpoenas. (Doc. 65.) Defendants filed an

---

[1] Rule 60(a) provides, in relevant part: "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice."

1   objection to Plaintiff's request on July 12, 2024. (Doc. 66.)

2   On August 12, 2024, Plaintiff filed a document titled "Request for 90 Days Extention
3   [sic] and Request Leave to File Fourth Amended Complaint." (Doc. 69.) Defendants filed an
4   opposition on August 15, 2024. (Doc. 70.)

5   **II.    DISCUSSION**

6   *Request for Subpoenas*

7   In his request, Plaintiff asks the Court to issue a subpoena to the California Department of
8   Corrections and Rehabilitation (CDCR) concerning body camera footage from April 26, 2024.
9   (Doc. 65.) Specifically, Plaintiff seeks footage from Correctional Officer Rawlings's camera
10  capturing dialogue between the officer and defense counsel Juliet Loompa, stating it "does not
11  match CDCR's version" of events as described in a declaration defense counsel filed on May 6,
12  2024. (*Id*.) Further, Plaintiff asks the Court to issue a subpoena to defense counsel for the audio
13  recording concerning a call involving ADR proceedings. (*Id*.) Plaintiff maintains subpoenas are
14  necessary because CDCR only retains footage for 90 days. (*Id*.)

15  Defendants oppose Plaintiff's request. (Doc. 66.) Defendants contend Plaintiff's request is
16  completely unrelated to the issues raised in the action and are a waste of judicial resources. (*Id*. at
17  1.) Plaintiff is asserting Defendants violated the Eighth Amendment by denying gender affirming
18  surgery, and thus were deliberately indifferent to Plaintiff's serious medical needs. (*Id*.) Those
19  claims are unrelated to the allegations Plaintiff raised in his Notice of Misconduct and, therefore,
20  are not limited to "'nonprivileged matter that is relevant to any party's claim or defense and
21  proportional to the needs of the case,'" citing Fed. R. Civ. P. 26(b)(1). (*Id*. at 1-2.) Further,
22  Defendants maintain Plaintiff has filed a separate complaint concerning those claims rendering
23  any further action unnecessary. (*Id*. at 2.) Additionally, Defendants contend that even were the
24  request granted, Plaintiff has "no means of playing the video." (*Id*.) Finally, Defendants state
25  defense counsel does not have an audio recording of the April 26, 2024, phone call with Plaintiff.
26  (*Id*.) Ms. Loompa's supporting declaration[2] states she spoke with the litigation coordinator at the

27
28  ---
[2] The declaration incorrectly references the year 2023 in two instances. Nevertheless, it is clear the events giving rise to these pleadings occurred in 2024.

2

1  Central California Women's Facility (CCWF) on June 13, 2024, and was advised he had been
2  contacted by the California State Bar concerning a complaint by Plaintiff. (*Id*. at 3, ¶ 2.) The
3  litigation coordinator explained an investigator requested body camera video footage of a
4  conversation between she and Officer Rawlins from April 26, 2024. (*Id*.) Further, Ms. Loompa
5  states she did not record the April 26, 2024, call between she and Plaintiff and she is not aware of
6  the existence of such a recording "other than what was recorded on Officer Rawlings' body
7  camera." (*Id*., ¶ 3.)

## Relevant Background

On May 3, 2024, Plaintiff filed a "Notice of Misconduct," indicating that on April 26, 2024, he was advised by Correctional Officer Rawlings that he had an attorney visit. (Doc. 57.) Rawlings informed Plaintiff "Juliet Lompa" was his attorney. (*Id*.) When Rawlings connected the call to the attorney, Rawlings stated, "This is Diamond Vargas your client on the phone, I will be stepping out." (*Id*.) Plaintiff contends Ms. Loompa never advised him she represented Defendants. (*Id*.) They spoke for forty to forty-five minutes, and Plaintiff was left with the impression Ms. Loompa represented him. (*Id*.) Plaintiff states he spoke freely about the case and at the end of the conversation asked what Ms. Loompa thought their chances were. (*Id*.) Plaintiff asserts Ms. Loompa replied, "'I'm not your attorney.'" Plaintiff maintains Ms. Loompa "completely misrepresented herself." (*Id*.) By not notifying Plaintiff "who she was," Plaintiff asserts Ms. Loompa violated Rule 8.3(a) of the Rules of Professional Conduct. (*Id*. at 2.) Further, Plaintiff states that at the time of the call he had recently filed a motion for the appointment of counsel and did not know the motion had been denied. (*Id*.) Plaintiff asserts Ms. Loompa advised him the motion had been denied and that he received the Court's order the following day. (*Id*.) Plaintiff states he is informing the Court "of what has happened Ms. [Loompa] said she felt uncomfortable I believe that is a [testament] of wrongdoing." (*Id*.)

Defendants filed a response to Plaintiff's notice on May 6, 2024. (Doc. 58.) Defendants assert that defense counsel "clearly identified herself as a Deputy Attorney General employed with the Office of the Attorney General." (*Id*. at 1.) Defendants further assert Juliet Loompa "never told Plaintiff she represented him, and she immediately told him she was not his attorney"

3

1    when Plaintiff suggested it. (*Id*. at 1-2.) Defendants maintain Plaintiff was mistakenly informed
2    that he had a telephone call with his attorney "as a result of an error by staff at CCWF." (*Id*. at 2.)
3            Defendants' response is supported by the Declaration of Juliet Loompa. (Doc. 58 at 3-4.)
4    Specifically, Ms. Loompa declares she contacted the litigation coordinator at CCWF on April 18,
5    2024, to request a teleconference with Plaintiff "to discuss whether referral to early ADR would
6    be productive." (*Id*. at 3, ¶ 3.) Ms. Loompa clearly identified herself as a Deputy Attorney
7    General employed with the Office of the Attorney General. (*Id*.)
8            Ms. Loompa declares that on April 22, 2024, the CCWF litigation coordinator's assistant
9    confirmed a teleconference for Friday, April 26, 2024, at 9 a.m. (Doc. 58 at 3-4, ¶ 3.) Next, Ms.
10   Loompa states she filed a notice of appearance in this action on April 24, 2024, and requested a
11   30-day extension of time to file "a Notice of Opt-Out of Post-Screening Alternative Dispute
12   Resolution (ADR)." (*Id*. at 4, ¶ 4.)
13           Ms. Loompa declares that on April 26, 2024, she was contacted by a correctional officer
14   at CCWF "who stated something to the affect, 'I have your client Diamond Vargas here and I will
15   be stepping out of the room.'" (Doc. 58 at 4, ¶ 5.) Ms. Loompa declares she "immediately
16   responded, 'I am not his attorney; I am opposing counsel.'" (*Id*.) She then stated that she needed
17   to connect her paralegal before starting the call and the officer acknowledged Ms. Loompa would
18   be adding her paralegal, S. Gibson. (*Id*.)
19           Ms. Loompa declares that once Ms. Gibson was on the call, she introduced herself to
20   Plaintiff and explained the purpose of her call. (Doc. 58 at 4, ¶ 6.) Specally, Ms. Loompa told
21   Plaintiff she wanted to speak about whether Plaintiff thought ADR would be productive. (*Id*.)
22   Plaintiff explained his medical status in detail, the related grievances filed, the surgeries still
23   needed, and indicated he was unwilling to dismiss the action before the necessary surgeries were
24   completed. (*Id*.) Plaintiff also inquired about monetary compensation and Ms. Loompa replied
25   that it did not appear Plaintiff asked for monetary compensation in the complaint, but that she
26   "would need to take any such demand back to [her] client." (*Id*.) Plaintiff then asked Ms. Loompa
27   what happened next and when he would hear from Ms. Loompa again. (*Id*.) Ms. Loompa declares
28   she responded that discovery would likely start. (*Id.*) She states Plaintiff "stated something about"

not having Ms. Loompa's contact information and about Ms. Loompa being Plaintiff's attorney. (*Id.*) Ms. Loompa declares that "was the first time" she became aware that Plaintiff "was potentially confused regarding who" Ms. Loompa represents. (*Id.*) She advised Plaintiff, "I am not your attorney. I am opposing counsel." (*Id.*) Ms. Loompa declares Plaintiff was confused because he thought the Court had granted his recent request to appoint counsel. (*Id.*) Ms. Loompa then advised Plaintiff that the Court had denied his request without prejudice. (*Id.*) Plaintiff advised defense counsel he had not received the order. (*Id.*) Plaintiff stated to defense counsel that "the counselor told" him he had a call "with his attorney this morning." (*Id.*) Ms. Loompa declares she explained to Plaintiff that when the officer who connected the call referred to her as Plaintiff's attorney, she immediately corrected the officer and stated she was opposing counsel. (*Id.*) Ms. Loompa apologized to Plaintiff about the mistake and stated she felt "badly about the confusion." (*Id.*) She declares the call lasted a total of 23 minutes. (*Id.*)

Next, Ms. Loompa declares: "At no time did I say that I was Mr. Vargas's attorney or that I was calling to discuss his case for the purpose of becoming his attorney. At no time did I say anything that I believed would give him the impression that I was his attorney. Had I believed that Mr. Vargas was under the misimpression that I was his attorney, I would have immediately made clear that was not the case." (Doc. 58 at 5, ¶ 7.) Additionally, Ms. Loompa declares that "[a]t no time" did Plaintiff disclose to her any privileged information or information not included in the relevant medical or correctional documents available to her as opposing counsel. (*Id.* at 5, ¶ 8.) Lastly, Ms. Loompa declares that after she received Plaintiff's misconduct notice, she contacted the litigation coordinator at CCWF, who confirmed that Plaintiff "was mistakenly told" he had a call with his attorney on that date. (*Id.* at 5, ¶ 9.) The litigation coordinator also advised Ms. Loompa that "all involved staff had received training to avoid this mistake in the future." (*Id.*)

<u>The Applicable Legal Standards and Analysis</u>

Federal Rule of Civil Procedure 45 governs subpoenas, which are the mechanism for obtaining discovery and testimony from non-parties. A subpoena may be issued by the Court, the Clerk of Court, or an attorney as an officer of the Court for witnesses and documents found

within its jurisdiction. *See* Fed. R. Civ. P. 45(a)(2), (3).

Rule 26(b)(1) of the Federal Rules of Civil Procedure establishes the scope of discovery, stating in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b). These standards mean that the Court may grant a request by Plaintiff to issue a Rule 45 subpoena to a properly identified non-party to discover information that is relevant to the party's claims or defenses, is not burdensome, and is not within Plaintiff's reasonable access, upon a sufficient showing of the importance of the information.

Here, the Court will deny Plaintiff's request. The information Plaintiff seeks is not relevant to his claims in this action, the importance of the issues at stake, the amount in controversy, the parties' resources, or the importance of resolving discovery issues. Further, the burden or expense involved outweighs any benefit.

### *Request for Extension of Time and Leave to File Amended Complaint*

On August 12, 2024,[3] as noted above, Plaintiff sought a 90-day extension of time and the Court's leave to file a fourth amended complaint. (Doc. 69.) Plaintiff states the deadline to amend his complaint is August 9, 2024. (*Id*. at 1.) Further, Plaintiff notes he received the Discovery and Scheduling Order the "week of May 12th." (*Id*.) In late June, Plaintiff received Defendants' motion concerning a stay and "responded with [his] objection," but had not yet received an order from the Court. (*Id*.) In light of the "change in personnel [and] the granting in part [of his] SRS [sexual reassignment surgery] procedures," Plaintiff believes he needs to file a fourth amended complaint "to provide updates and clarifications of each defendant in the initial civil rights violation and the ongoing violations." (*Id*.)

---

[3] The pleading is dated and signed August 7, 2024.

1    Plaintiff indicates he has received a hysterectomy since his last filing and that electrolysis
2    was scheduled for the following day. (Doc. 69 at 1.) Plaintiff contends that "does not change the
3    fact that [his] case is being treated different than inmate patients who are transitioning from male
4    to female," nor does it "change the fact that [his] procedures are unnecessarily delayed" or that he
5    "was deformed because CDCR medical staff was not properly taught how to attend wounds with
6    skin grafting." (*Id*. at 1-2.) Neither does it "change the fact that their negligence is subjecting
7    [him] to more surgery and delaying [his] full transformation." (*Id*. at 2.)

8    Plaintiff contends his journey has lasted five years and he still has "a year or more of
9    procedures to go." (Doc. 69 at 2.) Plaintiff states he has spent "several hundred hours on legal
10   research and filings without legal assistance" and hundreds of dollars on filing fees, copies,
11   postage, and stationery. (*Id*.) He states that "[n]ow CDCR wants to stay proceedings claiming
12   they are compliant. They are not compliant and are still violating my civil rights." (*Id*.) Plaintiff
13   asks the Court to deny the motion,[4] to extend the deadline for the filing of an amended complaint
14   by 90 days, and for leave to file a fourth amended complaint. (*Id*.)

15   Defendants oppose Plaintiff's requests. (Doc. 70.) Defendants argue that Plaintiff did not
16   submit an amended complaint by the August 9, 2024, deadline, and that Plaintiff's request should
17   be denied on that basis. (*Id*. at 4.) Defendants contend Plaintiff's request does not meet the
18   requirements of Rule 15 of the Federal Rules of Civil Procedure. (*Id*.) Defendants argue
19   Plaintiff's motion should be denied because four of the five determining factors weigh against
20   granting leave to amend. (*Id*.)

21   Specifically, Defendants asserts Plaintiff has failed to explain why he did not submit an
22   amended pleading on or before August 9, 2024, or why he should be permitted to add new claims
23   and parties at this late date. (Doc. 70 at 4-5.) Second, Defendants asserts allowing Plaintiff to file
24   a fourth amended complaint would prejudice them because it would delay litigation and introduce
25   unrelated claims. (*Id*. at 5.) Defendants maintain the statements by Plaintiff concerning being
26   treated differently, that he was deformed, and that negligence has subjected him to more surgeries

---

[4] This Court issued its Order Denying Defendants' Motion to Stay Proceedings on September 13, 2024. (*See* Doc. 72.)

7

and delayed his full transformation "seem to be a new Fourteenth Amendment claim and new state law claims against unknown defendants." (*Id*.) They maintain the proposed amendments would require screening by the Court and service of any new defendants. (*Id*.) Third, Defendants contend amendment would be futile because the proposed claims would be improperly joined. (*Id*.) The operative complaint alleges Defendants violated Plaintiff's Eighth Amendment rights by denying SRS surgery. (*Id*.) Defendants assert Plaintiff acknowledges SRS has been approved and note that the claims he seeks to add concern unreasonable delays and whether the treatment course falls below the standard of care. (*Id*.) Further, Defendants state Plaintiff "seems to be seeking the Court's intervention in the day-to-day operations of the CDCR or its medical facilities." (*Id*.) Because Plaintiff failed to provide a proposed amended complaint, Defendants cannot "fully analyze whether Plaintiff's proposed amendments can be properly joined" or whether "they would be sufficient to state a potentially cognizable claim, or alternatively, that their addition would be futile." (*Id*.) Fourth, Defendants argue Plaintiff has received numerous opportunities to amend his complaint and to add facts and claims but did not use those opportunities. (*Id*. at 5-6.)

Lastly, Defendants asks the Court to deny Plaintiff's requests for a 90-day extension of time and for leave to file a fourth amended complaint. (Doc. 70 at 6.) Alternatively, and if the Court is inclined to grant Plaintiff's requests, Defendants assert Plaintiff should be required to "formally move to amend and include a copy of the proposed amended complaint" to allow them to substantively address it. (*Id*.) Defendants also request the Court screen any amended complaint pursuant to 28 U.S.C. § 1915A and issue an order that their response is not required until the amended complaint is screened "and that any new Defendant not be required to respond until they are appropriately served with summons and complaint or submits a service waiver." (*Id*.)

The Applicable Legal Standards and Analysis

Rule 15 of the Federal Rules of Civil Procedure provides, in pertinent part:

**(a) Amendments Before Trial.**

**(1) Amending as a Matter of Course.** A party may amend its pleading once as a matter of course no later than:

>   (A) 21 days after serving it, or
>
>   (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>   **(2) Other Amendments**. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Initially, the Court notes Plaintiff did not submit a proposed fourth amended complaint with the August 12, 2024, motion as required by the Court's Local Rules. *See* Local Rule 137(c) ("If filing a document requires leave of court, such as an amended complaint after the time to amend as a matter of course has expired, counsel shall attach the document proposed to be filed as an exhibit to moving papers seeking such leave .... If the Court grants the motion, counsel shall file and serve the document in accordance with these Rules ...."). Instead, Plaintiff lodged a fourth amended complaint on September 16, 2024 (Doc. 73), after Defendants filed an opposition to the motion to amend.

Regardless of the procedural defect for a failure to include a proposed fourth amended complaint with the motion, even a cursory review of the lodged fourth amended complaint reveals Plaintiff's motion should be denied.

Plaintiff contends he believes he needs to file a fourth amended complaint "to provide updates and clarifications of each defendant in the initial civil rights violation and the ongoing violations." The Court finds such "updates and clarifications" to be unnecessary and a review of the lodged fourth amended complaint reveals that to be the case. All parties and the Court are aware of the factual and procedural history of this action and are familiar with the status of the SRS surgery and what procedures remain to be completed. Amending the complaint to add those "updates" would amount to a tremendous waste of this Court's already taxed resources.

Significantly too, the proposed fourth amended complaint asserts Plaintiff is suing all named defendants in their individual and official capacities. (Doc. 73 at 1:19-24.) But as Plaintiff has repeatedly been advised, the "Eleventh Amendment bars suits for money damages in federal court against state officials in their official capacity. [Citation.] A claim for prospective injunctive

1    relief against a state official is not barred by the Eleventh Amendment provided the official has
2    authority to implement the requested relief. [Citations.]" (*See* Doc. 17 at 6.) And "Jeff Macomber,
3    Secretary of CDCR, is the only defendant alleged to have the responsibility and authority to
4    implement the medical care policies governing [] CDCR. Therefore, he may be sued in his
5    official capacity, even though he had no personal involvement in the alleged constitutional
6    violations. All other defendants may only be sued in their individual capacities." (*See* Doc. 30 at
7    8.) Permitting the filing of the lodged fourth amended complaint would thus necessitate findings
8    and recommendations to dismiss the action, on that basis at a minimum, further delaying an
9    action that has been pending in this Court for more than four and a half years.
10       Additionally, the lodged fourth amended complaint names "Ralf Diaz" (Doc. 73 at 4) and
11   "Kathleen Allison" (*id*. at 6) as defendants. Both formerly held the position of Secretary of the
12   California Department of Corrections and Rehabilitation. However, as explained in this Court's
13   third screening order, Ralph Diaz was replaced by Kathleen Allison and Jeff Macomber replaced
14   Ms. Allison. Plaintiff was advised: "Under Rule 25 of the Federal Rules of Civil Procedure, when
15   a public officer ceases to hold office, the officer's successor is automatically substituted as a
16   party. Fed. R. Civ. P. 25(d)." (*See* Doc. 30 at 4, n.2.) Thus, there is no reason to add former public
17   officers as defendants in this action.
18       Next, the Court notes the lodged fourth amended complaint seeks, in part, the following
19   relief: "Plaintiff is asking that the Defendants be made to perform procedures in a more timely
20   fashion and not the one-year between the approval and procedures that is the current average."
21   (Doc. 73 at 21:23-26.) Defendants' concern that Plaintiff "seems to be seeking the Court's
22   intervention in the day-to-day operations of the CDCR or its medical facilities," is well taken. As
23   more fully discussed in its Order Denying Defendants' Motion to Stay Proceedings, for several
24   reasons Defendants cannot provide a time estimate for the completion of the remaining surgeries
25   to be performed. (*See* Doc. 72 at 3-4.) And the Court cannot simply order non-parties, like
26   contracted physicians and surgeons, to perform procedures "in a more timely fashion." *Zepeda v.*
27   *INS*, 753 F.2d 719, 727-28 (9th Cir. 1983) (the court may not attempt to determine the rights of
28   persons not before it). Moreover, requests for prospective relief are further limited by 18 U.S.C. §

3626(a)(1)(A) of the Prison Litigation Reform Act, which requires the Court find that the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal Right, and is the least intrusive means necessary to correct the violation of the Federal Right." As noted above, the Court finds Plaintiff's request here is not "narrowly drawn." Nor does it appear to be the "least intrusive means necessary correct the violation" alleged. Without expressly deciding that issue, it appears to the Court from the pleadings filed in this action, that the delays associated with completing all SRS procedures are not of Defendants' making. Rather, the delays appear to be associated with findings physicians or surgeons willing to perform the required procedures, entering into agreements with those individuals, and scheduling the procedures in accordance with their availability. Requiring more would certainly be intrusive.

In evaluating a motion to amend the complaint, the Court considers whether amendment (1) would prejudice the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. *Eminence Capital LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003), citing *Foman v. Davis*, 371 U.S. 178 (1962). This circuit accords the greatest weight to "the consideration of prejudice to the opposing party," the prejudice-showing burden resting on the opposing party. *Eminence Capital*, 316 F.3d at 1052. "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id*.

Here, the Court finds that granting further leave to amend in this instance should not be granted because the factors to be evaluated weigh against it. There is no question that further amendment would prejudice not only the opposing party, but also unduly burden this already significantly burdened Court, and would certainly produce an undue delay in litigation which has entered its fourth year. And, while leave to further amend has not been sought in bad faith, it appears that the proposed amendments are futile in the sense they are either unnecessary (updating or clarifying facts) or improper (individual v. official capacity; unnecessary parties). *Eminence Capital*, 316 F.3d at 1052.

Finally, because the Court will deny Plaintiff's motion for leave to file a fourth amended complaint, it will deny the related request to extend the deadline for doing so by 90 days. The

deadlines provided for in the Discovery and Scheduling Order issued May 9, 2024, will remain unchanged.

### III.    CONCLUSION AND ORDER

Accordingly, based upon the foregoing, the Court **ORDERS**:

1. Plaintiff's request for subpoenas (Doc. 65) is **DENIED**;
2. Plaintiff's motion or request to file a fourth amended complaint (Doc. 69) is **DENIED**; and
3. The Court's prior order (Doc. 74) is **VACATED** and replaced with this amended order.

IT IS SO ORDERED.

Dated:   **October 18, 2024**                                    _____
UNITED STATES MAGISTRATE JUDGE