ROB BONTA, State Bar No. 202668
Attorney General of California
KYLE A. LEWIS, State Bar No. 201041
Supervising Deputy Attorney General
JULIET LOMPA, State Bar No. 140980
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3365
 Fax:  (415) 703-5843
 E-mail:  Juliet.Lompa@doj.ca.gov
*Attorneys for Defendants S. Neumann, L. Taylor,
S. Chaiken, T. Buzzini, R. Mitchell and J. Macomber*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **DOMINIC (AKA DIAMOND) VARGAS,**<br><br>Plaintiff,<br><br>v.<br><br>**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,**<br><br>Defendants. | 1:20-cv-00083-JLT-CDB<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:     The Hon. Christopher D. Baker<br>Trial Date:   Not Set<br>Action Filed:  1/16/2020 |

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................... 1

Statement of the Case ................................................................................................. 2

Statement of the Issues .............................................................................................. 5

Statement of Facts ...................................................................................................... 6

    A.    Guidelines For Review of Requests for Gender Affirming Surgery. ......... 7

    B.    Plaintiff Has Been Approved for GAS and is Scheduled for Phalloplasty Surgery. .................................................................................. 10

    C.    Vargas's Grievance History .................................................................. 11

    D.    Vargas Did not Exhaust His Administrative Remedies. ........................... 12

Argument ................................................................................................................. 13

    I.    Legal Standard on Summary Judgment. ................................................. 13

    II.    Plaintiff Failed to Comply with the Prison Litigation Reform Act's Requirement That He Exhaust CDCR's Appeals Process for Health Care Grievances. ........................................................................................... 13

    III.    Defendants Were Not Deliberately Indifferent to Vargas's Serious Medical Needs. .............................................................................................. 16

        A.    Defendants Mitchell and Neumann Had No Role in the Decision Concerning Plaintiff's Requests for Gender Affirming Surgery. ............. 18

        B.    Defendants Chaiken, Buzzini, and Taylor Appropriately Acted on Plaintiff's Requests Based on His Conditions At The Time. .................... 18

    IV.    Plaintiff's Due Process Claim Fails Because a Transgender Man Seeking Gender Affirming Surgery is not Similarly Situated to a Cisgender Incarcerated person who is not Being Treated for Gender Dysphoria. ................. 20

    V.    Plaintiff's Claims Based on California Code of Regulations, Title 15, Section 3350.1 Are Moot. ................................................................... 23

    VI.    Defendants Are Entitled to Qualified Immunity. ...................................... 23

Conclusion ............................................................................................................... 25

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Albino v. Baca*
747 F.3d 1162 (9th Cir. 2014)............................................................................ 14

*Anderson v. County of Kern*
45 F.3d 1310 (9th Cir. 1995)............................................................................. 17

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986)....................................................................................... 13

*Ashcroft v. al-Kidd*
131 S. Ct. 2074 (2011)................................................................................... 24

*Broughton v. Cutter Laboratories*
622 F.2d 458 (9th Cir. 1980)............................................................................ 17

*Campbell v. Kallas*
No. 3:16-cv-00261-JDP, 2018 WL 2089351 (W.D. Wis. 2018) ..................................... 21, 22

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986)....................................................................................... 13

*City of Cleburne, Tex. v. Cleburne Living Ctr.*
473 U.S. 432 (1985)....................................................................................... 20

*Davis v. Scherer*
468 U.S. 183 (1984)....................................................................................... 24

*Dombrowski v. Eastland*
387 U.S. 82 (1967) ........................................................................................ 13

*Domingo v. Los Angeles Cnty. Sheriff's Dep't*
No. 218CV03227JAKSHK, 2022 WL 2229935 (C.D. Cal. Mar. 4, 2022) ........................... 18

*Edmo v. Corizon, Inc.*
935 F.3d 757 (9th Cir. 2019).......................................................................... 16, 18

*Estelle v. Gamble*
429 U.S. 97 (1976)........................................................................................ 17

*Farmer v. Brennan*
511 U.S. 825 (1994)....................................................................................... 17

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*
391 U.S. 253 (1968)....................................................................................... 13

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*Fleming v. LeFevere*
    423 F. Supp. 2d 1064 (C.D. Cal. 2006).................................................................................. 17

*Ghazali v. Moran*
    46 F.3d 52 (9th Cir. 1995)...................................................................................................... 4

*Harlow v. Fitzgerald*
    457 U.S. 800 (1982).............................................................................................................. 23

*Hartmann v. Cal. Dep't of Corr. & Rehab.*
    707 F.3d 1114 (9th Cir. 2013).............................................................................................. 20

*Jackson v. McIntosh*
    90 F.3d 330 (9th Cir. 1996.)................................................................................................. 17

*Jones v. Bock*
    549 U.S. 199 (2007).............................................................................................................. 14

*Jones v. Johnson*
    781 F.2d 769 (9th Cir. 1986)................................................................................................ 17

*Karnoski v. Trump*
    926 F.3d 1180 (9th Cir. 2019).............................................................................................. 21

*Malley v. Briggs*
    475 U.S. 335 (1986).............................................................................................................. 23

*McGuckin v. Smith*
    974 F.2d ................................................................................................................................ 17

*Michael M. v. Superior Court*
    450 U.S. 464 (1981).............................................................................................................. 21

*Nw. Env't Def. Ctr. v. Gordon*
    849 F.2d 1241 (9th Cir. 1988).............................................................................................. 23

*Pearson v. Callahan*
    555 U.S. 223 (2009)......................................................................................................... 23, 24

*Plumhoff v. Rickard*
    134 S. Ct. 2012 (2014)......................................................................................................... 24

*Plyler v. Doe*
    457 U.S. 202 (1982).............................................................................................................. 20

iii

## TABLE OF AUTHORITIES
### (continued)

*Page*

*Porter v. Nussle*
  534 U.S. 516 (2002) ................................................................................................ 14

*Romero v. Kitsap County*
  931 F.2d 624 (9th Cir. 1991) .................................................................................. 24

*Sanchez v. Vild*
  891 F.2d 240 (9th Cir. 1989) ............................................................................ 17, 20

*Saucier v. Katz*
  533 U.S. 194 (2001) .......................................................................................... 23, 24

*Williams v. Kelly*
  No. CV 17-12993, 2018 WL 4403381 (E.D. La. Aug. 27, 2018) ........................... 22

*WMX Tech., Inc. v. Miller*
  104 F.3d 1133 (9th Cir. 1997) ................................................................................ 17

*Wood v. Housewright*
  900 F.2d 1332 (9th Cir. 1990) ................................................................................ 17

*Woodford v. Ngo*
  548 U.S. 81 (2006) ................................................................................................. 16

*Young v. Smith*
  No. 215CV0733TLNCMKP, 2017 WL 3839970 (E.D. Cal. Sept. 1, 2017) ........... 20

STATUTES

United States Code
  Title 42, § 1983 .......................................................................................... 1, 2, 13
  Title 42, § 1988 ..................................................................................................... 4
  Title 42, § 1997e .................................................................................... 4, 12, 13

Prison Litigation Reform Act ..................................................................... 5, 13, 14

CONSTITUTIONAL PROVISIONS

Eighth Amendment ..........................................................................................*passim*

Fourteenth Amendment ....................................................................................*passim*

**TABLE OF AUTHORITIES**
(continued)

**Page**

**COURT RULES**

Federal Rules of Civil Procedure
    Rule 8(a)(3) ................................................................................................................ 3, 4
    Rule 56 ...................................................................................................................... 13

**OTHER AUTHORITIES**

CALIFORNIA CODE OF REGULATIONS, TITLE 15
    § 3350.1 ..................................................................................................................... 4, 23
    § 3999.200(b) ............................................................................................................... 23
    § 3999.227(b) ........................................................................................................... 12, 15
    § 3999.277(g) ............................................................................................................... 12

Defendants' Memorandum of Points and Authorities in Support of MSJ (1:20-cv-00083-JLT-CDB)

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiff Dominic Vargas, also known as Diamond Vargas, (Vargas or Plaintiff) is an incarcerated person in the custody of the California Department of Corrections and Rehabilitation (CDCR) and housed at Central California Women's Facility ("CCWF") in Chowchilla, California. Plaintiff brings this civil rights action under 42 U.S.C. § 1983, contending that Defendants unlawfully denied him access to medically necessary gender affirming surgery (GAS). Plaintiff asserts Eighth Amendment medical indifference claims against Defendants Dr. L. Taylor, Dr. S. Chaiken, Dr. T. Buzzini, Dr. S. Neumann, and Dr. R. Mitchell in their individual capacity, and a Fourteenth Amendment Equal Protection claim against Defendant Secretary Macomber in his official capacity. Since filing suit, CDCR approved Plaintiff's GAS request, provided him with several surgeries, and he is currently scheduled for phalloplasty surgery on July 1, 2026.

Defendants Dr. S. Chaiken and Dr. T. Buzzini, as Chair and Member, respectively, of the Gender Affirming Surgery Review Committee (GASRC or Committee) evaluated Plaintiff's requests for GAS on October 29, 2019 and December 29, 2020, consistent with the Guidelines for Review of Requests for GAS in effect at that time. Defendant Dr. L. Taylor, as Chair of the Statewide Medical Authorization Review Team (SMART), reviewed the GASRC's report, findings, and recommendations and approved the recommended action by the Committee. Defendants Dr. S. Neuman and Dr. R. Mitchell did not have any input or decision making authority related to Plaintiff's request for GAS, and these two Defendants must be dismissed.

Defendants move for summary judgment. The undisputed facts demonstrate Defendants Dr. L. Taylor, Dr. S. Chaiken, and Dr. T. Buzzini were not deliberately indifferent to Vargas's serious medical needs or disregarded an excessive risk to his health and safety. To the contrary, these Defendants carefully reviewed Mr. Vargas's mental health and medical records and concluded that it was medically acceptable and met the medical standard under the circumstances to deny his request for GAS in October 2019, because he suffered from mental health concerns that potentially posed a contraindication to surgery. Additionally, it was medically acceptable and met the medical standard for these Defendants to grant mammoplasty surgery and deny lower body surgery in

1

December 2020, because Plaintiff suffered from chronic kidney disease stage 3 that required further evaluation.  Once Plaintiff's known medical and mental health concerns were well-controlled for at least one year, no longer posed a contraindication to surgery, and were not likely to worsen with surgery, CDCR granted Plaintiff's request for GAS, specifically masculinizing bottom surgery (phalloplasty, vaginectomy, hysterectomy, salpingo-oophorectomy, urethroplasty, scrotoplasty, and placement of testicular prostheses, in June 2023.

Plaintiff cannot demonstrate that a triable issue exists regarding whether Defendants acted with deliberate indifference; nor can he demonstrate that a triable issue of fact exists whether he exhausted administrative remedies related to his claim against Defendants.  And, even if a constitutional violation occurred, Defendants are entitled to qualified immunity, because reasonable medical professionals in Defendants' position would not believe that their individualized, multidisciplinary recommendations for approval or denial of Plaintiff's request for GAS was unconstitutional.  Accordingly, this Court should grant Defendants' motion for summary judgment.

Regarding Plaintiff's Equal Protection claim, Plaintiff alleges CDCR policy requires transgender prisoners seeking GAS to undergo a different and more onerous process than cisgender incarcerated persons seeking GAS.  However, a transgender man seeking GAS is not similarly situated to a cisgender incarcerated person who is not being treated for gender dysphoria (GD) and is requesting the same surgeries for other medical conditions.  Additionally, Plaintiff has been approved for GAS, has been provided with various surgeries, and is scheduled for phalloplasty.

## STATEMENT OF THE CASE

Plaintiff, a state incarcerated person, proceeding *pro se* and *in forma pauperis*, filed his original complaint under 42 U.S.C. § 1983 on January 16, 2020, bringing an Eighth Amendment medical indifference claim and a Fourteenth Amendment equal protection claim against the CDCR; California Correctional Health Care Services (CCHCS); Grace Song, Deputy Medical Executive (A), Utilization Management; Robert Mitchell, Chief Medical Executive; and Statewide Medical Authorization Review Team Does 1-20; Gender Reaffirming Surgery Review

Defendants' Memorandum of Points and Authorities in Support of MSJ (1:20-cv-00083-JLT-CDB)

Committee Does 21-40; C. Pierini, Chief Support Executive; and S. Gates, Chief of Health Care Correspondence and Appeals Policy and Risk Management Services.  Plaintiff sought injunctive relief.  The Court screened Plaintiff's complaint and concluded it failed to state a claim on which relief may be granted but gave Plaintiff an opportunity to file an amended complaint.  (ECF No. 13.)

On September 28, 2020, Plaintiff filed a first amended complaint (FAC) alleging that Defendants unlawfully denied him access to medically necessary SRS.  (ECF No. 15.)  Plaintiff asserted an Eighth Amendment medical indifference claim and a Fourteenth Amendment equal protection claim against employees of the CDCR in their official capacity, including Secretary Diaz, L. Taylor, R. Mitchell, C. Pierini, S. Gates and Does 1-50.  The Court screened Plaintiff's FAC and noted it lacked a prayer for relief.  It found that liberally construed Plaintiff had stated a cognizable claim for official capacity liability for a healthcare policy that is deliberately indifferent facially and as applied, and a cognizable claim that the SRS policies were discriminatory based on transgender status.  The Court further instructed that the unidentified individuals sued as Doe defendants must be named or otherwise identified more particularly before service can go forward. The Court concluded that because the FAC failed to include a demand for relief as required by Federal Rule of Civil Procedure 8(a)(3), Plaintiff's FAC failed to state a claim on which relief may be granted.  (ECF No. 17 at 9.)  Plaintiff was given an opportunity to file a second amended complaint.  (*Id.*)

On July 29, 2021, Plaintiff filed a second amended complaint (SAC) alleging that Defendants unlawfully denied him access to medically necessary SRS.  (ECF No. 20.)  Plaintiff asserted an Eighth Amendment medical indifference claim and a Fourteenth Amendment equal protection claim against employees of the CDCR in their official capacity, including Secretary Macomber, L. Taylor, R. Mitchell, S. Neumann, T. Buzzini, M. Rudich, and S. Chaiken and in their individual capacities.  The Court screened Plaintiff's SAC and construed the SAC liberally finding that Plaintiff's allegations raised a cognizable claim for medical indifference under the Eighth Amendment against L. Taylor, R. Mitchell, S. Neumann, T. Buzzini, M. Rudich, and S. Chaiken, and a cognizable due process claim against Defendant Macomber, the only Defendant

3

with authority to implement CDCR policy.  Plaintiff's prayer for relief requested A) an injunction enjoining Defendants to provide Plaintiff with medically necessary surgeries to treat his significant distress from gender dysphoria; B) injunctive relief declaring CDCR and CCHCS policies regarding SRS treatment for gender dysphoria, reflected at a minimum in the temporary amendments to California Code of Regulations Title 15 Section 3350.1(c) unconstitutional on its face and as applied to Plaintiff; C) award reasonable attorney's fees and costs to Plaintiff pursuant to 42 U.S.C. Section 1988; and D) such other relief as the Court finds appropriate in the interest of justice.  (ECF No. 20 at 5.)  The Court concluded it could not grant injunctive relief against L. Taylor, R. Mitchell, S. Neumann, T. Buzzini, M. Rudich, and S. Chaiken, because they may only be sued in their individual capacities for damages.  Finally, the Court concluded Plaintiff's request for declaratory judgment was not necessary.  Plaintiff was given an opportunity to file a third amended complaint.  (ECF Nos. 30 and 34.)

Plaintiff filed his operative third amended complaint (TAC) on April 19, 2023, wherein he attested that he "want[ed] to stand on my Second Amended Complaint with these facts added." (ECF No. 33 at 1.)  Plaintiff did not amend his prayer for relief.[1]  (ECF No. 33 at 8.)  In screening the TAC, the Court noted it had mistakenly omitted including Claim I in the "Conclusion and Order" section of the prior screening order and noted that in the body of the screening order (ECF No. 30 at 10-11), it found that Plaintiff sufficiently pleaded this claim as to all Defendants except Defendant Macomber.  (ECF No. 34.)  The Court noted Plaintiff had deleted Defendant M. Rudich from the caption of the second amended complaint, which the Court construed as an

---

[1] Plaintiff did not seek relief in the form of damages for his alleged injuries or mental anguish that he alleges he suffered as a result of being subjected to CDCR's GAS policies. Plaintiff may not recover for mental or emotional injury, alone, without a prior showing of physical injury from the particular constitutional violation.  *See* 42 U.S.C. § 1997e(e).  Plaintiff's prayer for relief in his operative TAC requested injunctive and declaratory relief, attorneys' fees and costs, and "other relief as the Court finds appropriate in the interest of justice."  (ECF No. 33 at 8.)  Even though he names multiple Defendants in their individual capacities, he does not request damages for their alleged actions anywhere in the operative complaint.  (*See* ECF No. 33.)  And the "other relief" requested does not constitute a request for damages.  Federal Rule of Civil Procedure 8(a)(3) requires a pleading to contain "a demand for the relief sought," and "[a]lthough we construe pleadings liberally in their favor, *pro se* litigants are bound by the rules of procedure."  *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).  Plaintiff included specific requests for injunctive and declaratory relief, and if he intended to seek damages, he could have included such a request.  Thus, there is no basis for an award of damages against any Defendant.

4

affirmation Plaintiff wished to stand on his second amended complaint as screened and to dismiss Rudich. (*Id*. at 2:12-17.) The Court determined the action would proceed on Plaintiff's Eighth Amendment medical indifference claims against Defendants L. Taylor, R. Mitchell, S. Neumann, T. Buzzini, and S. Chaiken, and on his Fourteenth Amendment due process claim against Defendant Macomber.[2] (ECF No. 35.)

## STATEMENT OF THE ISSUES

1.      The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all administrative remedies before pursuing a civil action with respect to prison conditions. Plaintiff did not submit a timely grievance claim that addressed his claims against any of the Defendants, and he did not identify any of the Defendants. Should this Court enter summary judgment for Defendants on the basis that Plaintiff failed to exhaust administrative remedies?

2.      Plaintiff alleges that Dr. R. Mitchell and Dr. S. Neumann were deliberately indifferent to his serious medical needs by unlawfully denying him access to medically necessary GAS. The undisputed evidence shows that Dr. Mitchell only performed the required primary care evaluation of Plaintiff on July 25, 2019, that Dr. Neumann never provided any treatment to Vargas, and that neither Defendant had any decision-making role in Vargas's requests for GAS. Are Dr. Mitchell and Dr. Neumann entitled to summary judgment on Plaintiff's deliberate indifference claim?

3.      Plaintiff alleges that Dr. S. Chaiken and Dr. T. Buzzini were deliberately indifferent to his serious medical needs by unlawfully denying him access to medically necessary GAS. The evidence shows that Dr. Chaiken and Dr. Buzzini participated in reviews of Plaintiff's Request for GAS as treatment for his gender dysphoria, including review of his mental health and medical records and consultation with the mental health and medical clinicians familiar with the Plaintiff, and found contraindications to Vargas's requests for GAS pursuant to the applicable Guidelines for Review of Requests for GAS. Are Dr. S. Chaiken and Dr. T. Buzzinni entitled to summary judgment on Plaintiff's deliberate indifference claim?

4.      Plaintiff alleges that Dr. L. Taylor was deliberately indifferent to his serious medical

---

[2] Elsewhere in the screening orders the Court has characterized the Fourteenth Amendment claim as an Equal Protection claim. *See* ECF Nos. 13 at 6; 17 at 8; and 30 at 11.

5

needs by unlawfully denying him access to medically necessary GAS. The evidence shows that Dr. L. Taylor, Assistant Deputy Medical Executive and Chair of SMART, participated in two reviews of GASRC's recommended action related to Plaintiff's Request for GAS and on both occasions found there was no substantial evidence to reverse the decisions of the Committee. Is Dr. Taylor entitled to summary judgment on Plaintiff's deliberate-indifference claim?

5.     Plaintiff alleges that Defendant Macomber, in his official capacity, violated the due process clause of the Fourteenth Amendment when he applied a policy of disparate treatment based on Plaintiff's transgender status. The evidence shows that CCHCS' Guidelines for Review of Requests for GAS were not discriminatory on its face or as applied to him. Is Secretary Macomber entitled to summary judgment on Plaintiff's Fourteenth Amendment claim?

6.     Government officials are entitled to qualified immunity if their actions did not violate a clearly established constitutional right, or if it would not have been clear to a reasonable official in their position that the alleged conduct was unlawful. The evidence shows that Defendants Dr. S. Chaiken, Dr. T. Buzzini, and Dr. L. Taylor found contraindications that prevented further consideration of Plaintiff's GAS request until they were resolved or mitigated, while Dr. R. Mitchell and Dr. S. Neumann had no role in the GAS decision. Under the circumstances, are Defendants entitled to qualified immunity?

**STATEMENT OF FACTS**

Plaintiff is a transgender male and an incarcerated person in the custody of the CDCR at CCWF. (Separate Statement of Undisputed Facts (SSUF) No. 1.) Plaintiff has identified as male while in custody of CDCR, and he was diagnosed with GD in 2017. (ECF No. 33 at 12.) At that time, Plaintiff's doctors determined it was medically necessary for him to receive treatment for his condition, and he began hormone replacement therapy in the form of testosterone injections on April 26, 2017. (*Id*.) In 2018, Plaintiff reported to his treating providers that the hormone regimen was not adequately reducing his symptoms of GD, and Plaintiff asked his primary care physician, Dr. A. Gonzalez, to be considered for SRS. (*Id*. at 13.) Dr. Gonzalez confirmed his eligibility for SRS. (*Id*.)

**A.    Guidelines For Review of Requests for Gender Affirming Surgery.**

Pursuant to the Guidelines for Review of Requests for GAS in effect at that time, upon receipt of Vargas's request for GAS, CCWF submits Vargas's Request for Services to SMART, who then forwards the request to GASRC, a subcommittee of SMART.  GASRC then evaluates and considers possible surgery consistent with the Guidelines.[3]  (SSUF Nos. 10, 11.)  The Committee shall determine whether the patient is an appropriate candidate for Surgery from a medical and mental health perspective, following consideration of the following applicable factors and report their recommendation to SMART:

1) The patient has been diagnosed with GD by a Division of Correctional Health Care Services (DHCS) mental health provider and the diagnosis is supported with appropriate documentation and clinical justification as set forth by CCHCS policies and care guidelines.
2) The efficacy of the current treatment for GD being offered and received to ameliorate the patient's GD from both a medical and mental health perspective.
3) Whether other treatments besides Surgery should be considered for addition to the existing treatment regimen.
4) The patient has no current mental health or medical contraindications that would preclude any further consideration of the request for Surgery until they are resolved or mitigated.
5) Any known medical and/or co-existing mental health concerns have been fully assessed and have been well-controlled for at least one year; do not pose a contraindication to Surgery; and are not likely to worsen with Surgery or impede surgical recovery.
6) The patient has: a) Continuously manifested a desire to live and to be accepted as a member of the preferred sex, including the desire to make his/her body as congruent as possible with the preferred sex, for at least two years; b) Lived full-time in his/her desired gender role for at least 12 months, as permitted in the correctional environment, and has received at least 12 continuous months of medically supervised hormone therapy appropriate to his/her gender goals (unless there was a medical contraindication to this therapy);
7) The patient is in significant distress due to lack of reasonable response to available nonsurgical treatment of gender dysphoria.  The patient's gender dysphoria symptoms cannot be attributed to the conditions of confinement, mental illness or any other factor; and there are no available, additional treatments other than Surgery that are likely to improve or alleviate the patient's symptoms.
8) The patient has been provided with necessary and relevant information to enable him/her to understand that his/her environment will be evaluated after Surgery and

---

[3] GASRC follows guidelines set up by the World Professional Association of Transgender Health (WPATH) Standards of Care and by CDCR/CCHCS to decide if surgery is medically necessary and safe.  Health Care Department Operations Manual, Section 1.2.16 (WPATH uses the "contraindication to surgery" guideline.)

7

any new environment may be unfamiliar and pose significant adaptive challenges. The patient understands that appropriate post-operative placement will be reviewed on a case-by-case basis by CDCR custody staff.

9) The patient can be expected to successfully and safely transfer and adjust medically and psychologically to confinement postoperatively.

10) There is no evidence suggestive of any external coercion or predation and the desire for Surgery is freely given by the patient.

11) Any other information available which may be relevant to their discussion or determination. (SSUF No. 11.)

On August 16, 2019, Plaintiff's physician submitted a Physician Request for Services for GAS. (SSUF No. 13.) On September 5, 2019, Dr. Glass, Psy.D., Plaintiff's treating psychologist, completed a CDCR evaluation for consideration for SRS. (ECF No. 33 at 14.) On September 9, 2019, the Request for Services (RFS) was submitted to SMART and forwarded to GASRC. (SSUF No. 13.)

On October 29, 2019, GASRC denied Plaintiff's request for GAS, finding that it was not medically necessary and that the current treatment provided significant relief that was adequate and sufficient for his condition. GASRC found that Plaintiff was diagnosed with Bipolar Disorder Not Otherwise Specified (NOS) in April 2019, and in September 2019 he was described as manic and refusing further medications. GASRC believed these mental health concerns posed a potential contraindication to surgery, as it was possible these conditions would worsen with or impede surgical recovery. (SSUF No. 14.)

Upon receipt of the GASRC's report of findings, SMART would meet to consider the report and any other information relevant to their determination. Pursuant to the Guidelines, SMART shall give great weight to the decision of GASRC and shall only reverse the decision when they find that 1) there is no substantial evidence to support the decision of the Committee; or 2) the Committee based their decision on erroneous facts; or 3) the Committee failed to consider significant relevant information bearing on the case in reaching their decision, or new evidence from credible and reliable sources has come to the attention of SMART which was not available to the Committee at the time of their decision. (SSUF No. 12.)

On November 19, 2019, SMART found there was no substantial evidence to reserve the

decision of GASRC denying Vargas's request for GAS. (SSUF No. 15.)

On October 26, 2020, a second RFS for GAS was submitted on behalf of Vargas, specifically bilateral reduction mammoplasty, hysterectomy, salpingo-oophorectomy, and procedures for phalloplasty, to include urethroplasty, scrotoplasty, and placement of testicular prostheses.  (SSUF No. 16.)

On December 29, 2020, GASRC provided a recommendation to SMART that reduction mammoplasty be approved and masculinizing bottom surgeries not be approved until medical and mental health conditions had been fully assessed and well-controlled for at least one year.  GASRC noted Plaintiff suffered from chronic kidney disease stage 3, which had not been further evaluated, and that the primary care provider would be ordering a renal ultrasound as well as a nephrology eConsult.  The Committee further noted Plaintiff's mood lability had improved in the past year, but he continued to demonstrate intermittent mood symptoms and disruptive behavior and has declined medications that may help stabilize his mood.  The Committee concluded there was evidence that suggested Plaintiff did not have the ability to adjust medically and psychologically to his new environment postoperatively, including complying with medical and mental health interventions, as he had a history of declining psychotropic medications.  (SSUF No. 17.).  The inherent risk of each procedure is assessed and approved independently, and top surgery has much less risk than bottom surgery.  (*Id*.)

On January 5, 2021, SMART reviewed GASRC's recommended action of "Approved" for Mr. Vargas's request for mammoplasty and any related chest surgery, and "Not Approved" for Mr. Vargas's request for any lower body surgery until medical and mental health conditions have been fully assessed and well controlled for at least one year.  (SSUF No. 18.)  SMART found there was no substantial evidence to reverse the decision of the Committee and approved the recommended action by the Committee.  (*Id*.)

On October 3, 2022, Plaintiff underwent masculinizing mammoplasty surgery. (SSUF No. 19.)  On May 14, 2024, Vargas saw Thomas Satterwhite, M.D. of Align Surgical Associates regarding the results of his masculinizing mammoplasty surgery; Dr. Satterwhite recommended revision surgery. On June 20, 2024, Vargas' PCP Dr. Okereke placed the RFS for the revision

9

surgery. (Joelson Decl., ¶ 14.)  On September 12, 2024, Vargas underwent bilateral chest scar revision and bilateral nipple-areolar reconstruction.  (SSUF No. 25.)

> **B.    Plaintiff Has Been Approved for GAS and is Scheduled for Phalloplasty Surgery.**

On April 20, 2022, a third RFS was submitted for Vargas for hysterectomy, salpingo-oophorectomy, phalloplasty, urethroplasty, scrotoplasty, and placement of testicular prostheses. (SSUF No. 20.)  On November 23, 2022, SMART did not find any significant potential medical contraindications to GAS, specifically masculinizing bottom surgery (phalloplasty, vaginectomy, hysterectomy, salpingo-oophorectomy, urethroplasty, scrotoplasty, and placement of testicular prostheses).[4]  (SSUF No. 21.)

On June 6, 2023, GASRC found there was no substantial evidence to reverse the decision of SMART and approved GAS, and masculinizing bottom surgery.  (SSUF No. 22.)

On July 8, 2024, Plaintiff underwent a hysterectomy.  (SSUF No. 23.)

Beginning in August 2024, Vargas began the process of hair removal of thigh needed before phalloplasty can be performed.  During an August 13, 2024, consultation with Dr. Michael Safir, Vargas, in consultation with his physician, changed the donor site for his phalloplasty to his forearm, and in December 2024, he began electrolysis to his forearm.[5]  (SSUF No. 24.)

On October 18, 2024, an RFS was submitted for Vargas for facial masculinization and masculinizing body contouring.  (SSUF No. 25.)  On November 26, 2024, GASRC approved facial and body contouring masculinization.[6]  (SSUF No. 26.)

On July 11, 2025, Plaintiff was seen by Angela Rodriguez, M.D., at ART Surgical, for a consultation regarding facial masculinization surgery.  Dr. Rodriguez determined Vargas has a masculine face and that he was not a candidate for facial masculinization.  (SSUF No. 27.)

---

[4] Commencing July 2021, the process changed for processing GAS requests whereby SMART performed the first review of the cases and commented on contraindications to surgery and GASRC provided the final decision.  Prior to July 2021, SMART made the final decision.

[5] CCWF was informed in December 2025 that the onsite electrolysis vendor was no longer willing to go to CCWF.  CDCR is actively investigating options for Vargas and all CCWF patients who are receiving electrolysis. (Joelson Decl., ¶ 13.)

[6] Commencing June 30, 2023, the process changed whereby SMART was no longer involved with processing GAS requests and only GASRC reviews the case and provides the final decision.

On January 9, 2026, Plaintiff was seen by Dr. Rodriguez for a masculinizing body contouring consultation.  Dr. Rodriguez advised Vargas he needed an abdominal ultrasound to rule out a hernia prior to scheduling the body contouring surgery.  (SSUF No. 27.) On March 23, 2026, Mr. Vargas underwent an abdominal ultrasound examination, which revealed a fat-containing supraumbilical ventral hernia.  (SSUF No. 28.)  Vargas is in the process of being scheduled for a follow-up visit with Dr. Rodriguez to determine the timing of the hernia repair and for masculinizing body contouring.  (*Id*.)

Plaintiff is currently scheduled for phalloplasty surgery on July 1, 2026.  (SSUF No. 29.) Phalloplasty and masculinizing body contouring are the final remaining steps in Vargas's gender affirming surgical transition. (SSUF No. 30.)

### C.    Vargas's Grievance History

Between the years January 1, 2019 and April 19, 2023, the date of Plaintiff's operative third amended complaint, Plaintiff submitted the following nine healthcare grievances, all of which received a Headquarters Level Response (SSUF No. 34):

a. CCWF HC 19000205 - Plaintiff's stated issues were deliberate indifference towards medical need for physical therapy and lidocaine gel, and delayed receipt of his testosterone shot. (SSUF No. 35.)

b. CCWF HC 19000365 - Plaintiff's stated issue was being denied SRS surgery and wanted to be scheduled immediately.  (SSUF No. 36.)

c. CCWF HC 20000880 - Plaintiff's stated issue was early release due to COVID-19 due to being medically high risk.  (SSUF No. 37.)

d. CCWF HC 20000917 - Plaintiff's stated issues were his request for immediate release due to violation of his rights during COVID-19, as he is medically high risk and lives in an unsanitary unit with limited cleaning supplies and housed 6-8 deep in cells with no way to socially distance, is mobility impaired, has mental health problems, has not been able to be seen by his medical practitioners, and doctors' orders are not being complied with.  (SSUF No. 37.)

e. CCWF HC 20000989 – Plaintiff's stated issue was he had not received knee injections to address his chronic pain.  (SSUF No. 37.)

f. CCWF HC 20000990 - Plaintiff's stated issue was he had not received a response to a previous grievance.  (SSUF No. 37.)

g. CCWF HC 22000001 - Plaintiff's stated issues were that his primary care physician, Dr Okereke, would not allow him to ask questions, would not answer the questions he was able to ask, did not explain his treatment plan, was difficult to communicate with, and was demanding. (SSUF No. 37.)

h. CCWF HC 22000020 - Plaintiff's stated issues were disagreement with primary care physician, Dr. Okereke, related to her refusal to discuss pain management during primary care visits. (SSUF No. 37.)

11

i. CCWF HC 22000357 - Plaintiff's stated issues were disagreement with his primary care physician Dr. Okereke; request that asthma be removed from his chrono; and request for wipes for his genital area because testosterone shots made his genital area dry.  (SSUF No. 37.)

### D.    Vargas Did not Exhaust His Administrative Remedies.

Plaintiff was required to exhaust the CDCR's mandatory healthcare appeal grievance procedure prior to initiating this action.  42 U.S.C. § 1997e(a).  Plaintiff's third amended complaint asserts two cognizable claims: a Fourteenth Amendment due process claim against Secretary Macomber; and an Eighth Amendment claim for deliberate indifference against Defendants Dr. R. Mitchell, Dr. S. Neumann, Dr. S. Chaiken, Dr. T. Buzzini, and Dr. L. Taylor for events that transpired from September 9, 2019 through January 5, 2021, relating to Defendants denial of two requests for GAS.  (ECF No. 35.)

Plaintiff did not submit a timely healthcare appeal requesting GAS.  Pursuant to California Code of Regulations (CCR), Title 15, § 3999.227(b), the patient shall submit a healthcare grievance within 30 days of the action being grieved, or initial knowledge of the action or decision being grieved.  Plaintiff's only relevant appeal, Log No. CCWF HC 19000365, was received at the Institutional level on May 21, 2019, months before his Request for Services for GAS had been submitted to the GASRC and SMART Committees.  (SSUF Nos. 13, 36.)  In his appeal, Plaintiff complained he was being denied gender affirming surgery and wanted to be scheduled immediately.  Plaintiff received a Headquarters Level response to his appeal on October 29, 2019, the same day the GASRC Committee submitted its findings and recommendations to SMART; the SMART Committee did not act on GASRC's recommendation until November 19, 2019.  (SSUF Nos. 14, 15.)

Additionally, Plaintiff did not comply with CCR, Title 15, § 3999.277(g), which requires the patient to include involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement.  If the patient does not have information to identify involved staff member(s), the patient shall provide any other available information that may assist in processing the health care grievance.  In Log No. CCWF HC 19000365, Plaintiff did not provide the following information: dates of when his SRS was denied, identify the name or

12

position of any person, including the Defendants, and he did not complain that the CDCR policy for GAS requires transgender prisoners to undergo a different and more onerous process than cisgender incarcerated persons. (SSUF No. 36.) Thus, Plaintiff did not exhaust a timely appeal against any of the Defendants.

# ARGUMENT

## I.    LEGAL STANDARD ON SUMMARY JUDGMENT.

Federal Rule of Civil Procedure 56 provides that a summary-judgment motion shall be granted when there is no genuine dispute as to any material fact, and if the moving party is entitled to judgment as a matter of law. The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a motion for summary judgment must affirmatively show that a dispute about a material fact is genuine, such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence presented by the nonmoving party is "merely colorable, . . . or is not sufficiently probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted) (citing *Dombrowski v. Eastland*, 387 U.S. 82 (1967) (per curiam), and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). There is no triable issue of fact unless the nonmoving party submits sufficient evidence for a jury to return a verdict in the nonmoving party's favor. *Id*. at 249.

## II.    PLAINTIFF FAILED TO COMPLY WITH THE PRISON LITIGATION REFORM ACT'S REQUIREMENT THAT HE EXHAUST CDCR'S APPEALS PROCESS FOR HEALTH CARE GRIEVANCES.

The PLRA requires prisoners to exhaust administrative remedies before filing suit: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The requirement is a prerequisite to all federal suits, "[e]ven when the prisoner seeks relief not

13

available in appeal proceedings, notably money damages." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The demonstration of exhaustion is not a pleading requirement; rather, Plaintiff's failure to exhaust administrative remedies is an affirmative defense that a defendant must raise and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted under the PLRA is a motion for summary judgment. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). In the context of seeking summary judgment based on the failure to comply with the PLRA's exhaustion requirement, "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. When the defendant satisfies this initial burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim and at the very beginning of the litigation. *Id*. at 1170. When disputed facts prevent summary judgment, the district judge, not a jury, should decide those disputes through a preliminary proceeding. *Id*. If the summary-judgment motion is denied, the case may proceed to the merits. *Id*. at 1171.

All levels of health care appeals/grievances, including the institutional and headquarters levels of review, are tracked through a computer database known as the Health Care Appeals and Risk Tracking System (HCARTS). (Martin Decl. at ⁋ 4.) HCARTS is kept as a regularly conducted activity, and the computer entries are made at or near the time of the occurrence by the employee who is processing the appeal/grievance. (*Id*.)

Plaintiff did not submit a timely appeal regarding Defendants' alleged deliberate indifference in denying his request for GAS or regarding CDCR's policy for transgender prisoners seeking GAS. Thus, he failed to exhaust administrative remedies as required under the PLRA and Defendants are entitled to summary judgment.

14

In his complaint, Plaintiff alleges that Defendants denial of a medically necessary surgery amounts to cruel and unusual punishment in violation of the Eighth Amendment.  (ECF No. 33 at 6.)  But Plaintiff submitted his grievance before any decision had been rendered on his Request for GAS.  Under the regulations, Plaintiff was required to submit a health-care grievance within thirty days of the denial.  (Cal. Code Regs tit. 15 § 3999.227(b).)  Additionally, Plaintiff did not submit a health-care grievance regarding a delay in granting his Request for GAS or regarding CDCR's policy for transgender prisoners seeking GAS.  (Martin Decl., ¶¶ 6-10.)

During the relevant time period, the only appeal Plaintiff submitted related to denial of GAS, Tracking No. CCWF HC 19000365, was received at the institutional level on May 21, 2019.  (SSUF No. 36, Ex. C.)  The Institutional-Level Review authored by C. Pierini, Chief Support Executive at CCWF, addressed Plaintiff's pending Request for GAS on July 25, 2019: "On July 24, 2019, your provider submitted a CDC 7243, Health Care Services Physician Request for Services, to the Institution Utilization Management Committee indicating your desire for GAS.  The Institutional Utilization Management Committee will review your request and subsequently refer it to the Headquarters Utilization Management Committee for evaluation and consideration for possible GAS in accordance with the Guidelines for Review of Requests for GAS supplement to the CCHCS/ DHCS Care Guide: Gender Dysphoria."  (SSUF No. 36, Ex. C at p. 7.)  The Headquarters-Level Response authored by S. Gates, Chief, Health Care Correspondence and Appeals Brance, Policy and Risk Management Services, addressed Plaintiff's appeal on October 29, 2019:  "Your most recent mental health clinical evaluation for the issue contained in this grievance was on September 5, 2019, where the clinician documented a written evaluation will be forwarded to Utilization Management for submission to the Statewide Medical Authorization Review Team for submission of the Request for Services requesting GAS.  Per the Guidelines for Review of Request for Fender Affirming Surery supplement to the CCHCS/DHCS Care Guide: Gender Dysphoria, 'Patients who are not approved for Surgery may submit a new request for Surgery no sooner than one year after issuance of a letter disapproving the request.' "  (*Id.*, Ex. C at p. 2.)

15

Plaintiff's submission of CCWF HC 19000365 did not exhaust administrative remedies for his claims against Defendants, because the grievance was submitted and adjudicated before GASRC had acted upon the request for GAS and before SMART had submitted its approval or disapproval of GASRC's submission. (SSUF Nos. 13-15.) Moreover, Plaintiff did not submit an appeal regarding CDCR's alleged policy of disparate treatment based on gender or transgender status. (SSUF Nos. 34-37.) Plaintiff's grievance would not have placed prison authorities on notice of the specific claims raised in this lawsuit, as it did not complain about GASRC and SMART's denial of Plaintiff's request for GAS or CDCR's alleged policy of disparate treatment based on transgender status. Therefore, Plaintiff's appeal was untimely under the regulations. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (the PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal"). Thus, Plaintiff is barred from pursuing his claims against Defendants.

Plaintiff cannot credibly argue he was prevented from filing a timely appeal within 30 days of SMART's approval of the Committee's findings to deny Plaintiff's Request for GAS. While Plaintiff was housed at CCWF, he was aware of the grievance process and availed himself of the process nine times. (Martin Decl. ₱₱ 6-9, Exs. B-J.) Plaintiff failed to exhaust his claims against Defendants and they are entitled to summary judgment.

## III.    DEFENDANTS WERE NOT DELIBERATELY INDIFFERENT TO VARGAS'S SERIOUS MEDICAL NEEDS.

Plaintiff asserts that he suffers from a serious medical need for treatment of his GD, which is "[d]istress that is caused by a discrepancy between a person's gender identity and that person's sex assigned at birth (and the associated gender role and/or primary and secondary sex characteristics)." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 769 (9th Cir. 2019), *cert. denied sub nom. Idaho Dep't of Corr. v. Edmo*, 141 S. Ct. 610 (2020) (quoting World Prof'l Ass'n for Transgender Health, Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People 2 (7th ed. 2011)). The Ninth Circuit has recognized that "[g]ender dysphoria is a serious but treatable medical condition." *Edmo*, 935 F.3d at 769. Plaintiff argues that the Defendants'

denial of a medically necessary surgery for his severe GD amounts to cruel and unusual punishment in violation of the Eight Amendment.

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976);*; Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." *McGuckin v. Smith*, 974 F.2d at 1059, overruled on other grounds, *WMX Tech., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). "[I]ndifference to the inmate's medical needs must be purposeful and substantial; negligence, inadvertence, or differences in medical judgment or opinion do not rise to the level of a constitutional violation." *Fleming v. LeFevere,* 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) (citing *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir. 1996.)).

In applying this standard, the Ninth Circuit has held that before it can be said that an incarcerated person's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980), quoting *Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995); *McGuckin,* 974 F.2d at 1050. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Importantly, a difference of opinion between medical personnel regarding treatment does not amount to deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

17

While some individuals with GD can be treated without surgery, for others surgery is medically necessary to alleviate their GD. *Edmo v. Corizon, Inc.*, 935 F.3d at 771. The accepted standard of care requires providers to "individually diagnose, assess, and treat individuals' gender dysphoria, including for those individuals in institutionalized environments." *Id.* "Failure to follow an appropriate treatment plan can expose transgender individuals to a serious risk of psychological and physical harm." *Id.*

**A. Defendants Mitchell and Neumann Had No Role in the Decision Concerning Plaintiff's Requests for Gender Affirming Surgery.**

Plaintiff alleges that Defendants Dr. R. Mitchell and Dr. S Neumann were deliberately indifferent to his serious medical needs by unlawfully denying him access to medically necessary GAS. (SSUF No. 2.) But, the undisputable evidence shows that Dr. R. Mitchell, Chief Medical Executive at CCWF, only performed the required primary care evaluation of Plaintiff on July 25, 2019, and had no decision-making role concerning Plaintiff's requests for GAS. (SSUF No. 4.) Furthermore, the undisputable evidence shows that Dr. S. Neumann, Chief of Mental Health at CCWF, never provided any treatment to Plaintiff and had no decision-making role in Vargas's requests for GAS. (SSUF No. 5.) Where there is no evidence that a defendant had any role in the alleged harms suffered by a plaintiff, summary judgment is appropriate. *Domingo v. Los Angeles Cnty. Sheriff's Dep't*, No. 218CV03227JAKSHK, 2022 WL 2229935, at *17 (C.D. Cal. Mar. 4, 2022*), report and recommendation adopted,* No. 218CV03227JAKSHK, 2024 WL 457138 (C.D. Cal. Feb. 6, 2024). Because there is no issue of material fact concerning Defendants Dr. R. Mitchell and Dr. S. Neumann's involvement in the decision to deny Plaintiff's request for GAS, they are entitled to summary judgment on the deliberate indifference claim.

**B. Defendants Chaiken, Buzzini, and Taylor Appropriately Acted on Plaintiff's Requests Based on His Conditions at the Time.**

Defendants Dr. S. Chaiken, Dr. T. Buzzini, and Dr. L. Taylor were members of the GASRC and SMART Committees, and they reviewed Plaintiff's Requests for GAS. The undisputed evidence shows Defendants followed the Guidelines for Review of Requests for GAS when they did not approve Vargas's request for GAS in October and November 2019. (SSUF Nos. 10-17.)

18

GASRC is required to consider "any known medical and/or co-existing mental health concerns have been fully assessed and have been well-controlled for at least one year; do not pose a contraindication to Surgery; and are not likely to worsen with Surgery or impede surgical recovery." The GASRC Committee found that Plaintiff's mental health diagnosis posed a potential contraindication to surgery. (SSUF Nos. 11, 14.) Plaintiff was diagnosed with Bipolar Disorder NOS in April 2019, just five months before receiving Vargas's request for GAS, and, in September 2019, Plaintiff's mental health records noted that he appeared "manic," and was refusing further medications. GASRC found that it was possible these mental health conditions would worsen with or impede surgical recovery. (*Id*.) Dr. L. Taylor and the other members of SMART, in compliance with the Guidelines, found there was no substantial evidence to reverse the decision of the GASRC Committee. (SSUF Nos. 12, 15.)

Likewise, Defendants Dr. S. Chaiken, Dr. T. Buzzini, and Dr. L. Taylor followed the Guidelines when it partially approved/partially denied Vargas's Request for GAS in December 2020 and January 2021 as members of GASRC and SMART. GASRC recommended approving Vargas's request for reduction mammoplasty and not approving masculinizing bottom surgeries because the Committee found that Vargas suffered from chronic kidney disease stage 3 that required further evaluation. (SSUF No. 17.) The inherent risk of each procedure is assessed and approved independently, and top surgery has much less risk than bottom surgery. (Joelson Decl., ¶ 8; Buzzini Decl., ¶ 10.) Dr. L. Taylor and the other members of SMART, in compliance with the Guidelines, found there was no substantial evidence to reverse the decision of the GASRC Committee. (SSUF No. 18.)

Plaintiff's third Request for GAS submitted on April 20, 2022, was approved in June 2023, although at that time only Dr. T. Buzzini was a member of the Committee that made that decision. (SSUF No. 22.)

Defendants Dr. S. Chaiken, Dr. T. Buzzini, and Dr. L. Taylor, through the Committees they sat on, followed the Guidelines in initially denying Plaintiff's requests for GAS because they found that his medical and mental health conditions posed contraindications to GAS and that the conditions could worsen with surgery or impede surgical recovery. Plaintiff claims Defendants

19

unlawfully denied him medically necessary GAS in violation of the Eighth Amendment.  (SSUF No. 2.)  But this is based solely on his opinion of his condition and does not account for the reasons that Defendants initially denied his GAS requests.  Aside from his own claims, Plaintiff provides no information demonstrating that Defendants' actions were medically improper under the circumstances.  Plaintiff's disagreement with the Committees' decisions amounts to a mere disagreement regarding medical treatment, which does not violate the Eighth Amendment. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Young v. Smith*, No. 215CV0733TLNCMKP, 2017 WL 3839970, at *3 (E.D. Cal. Sept. 1, 2017).

Thus, Defendants were not deliberately indifferent to Vargas's requests for GAS and summary judgment must be granted.

## IV. PLAINTIFF'S DUE PROCESS CLAIM FAILS BECAUSE A TRANSGENDER MAN SEEKING GENDER AFFIRMING SURGERY IS NOT SIMILARLY SITUATED TO A CISGENDER INCARCERATED PERSON WHO IS NOT BEING TREATED FOR GENDER DYSPHORIA.

Plaintiff alleges that Defendant Macomber violated the Due Process clause of the Fourteenth Amendment and applied a policy of disparate treatment based on Plaintiff's transgender status. (SSUF No. 3.)  Plaintiff alleges that CDCR policy requires transgender prisoners seeking GAS for gender dysphoria to undergo a different and more onerous process than cisgender incarcerated persons and that the regulatory scheme is facially discriminatory against transgender prisoners because medically necessary surgeries are unavailable to them, while cisgender incarcerated persons can receive the same medically necessary procedures.  (*Id*.)

The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection against the laws," which essentially requires all persons similarly situated to be treated alike.  U.S. Const. amend. XIV; *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982).  To state a claim under the Equal Protection Clause, Plaintiff must allege facts sufficient to support a claim that prison officials intentionally discriminated against him based on his membership in a protected class. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013).  Generally, legislation is presumed to be valid and will be sustained if it is rationally related to a legitimate state interest.  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).  However,

20

when discrimination is based on transgender status, the court should apply an intermediate scrutiny standard, "something more than rational basis but less than strict scrutiny." *Karnoski v. Trump*, 926 F.3d 1180, 1201 (9th Cir. 2019).

Plaintiff fails to state a due process claim because a transgender man seeking GAS is not similarly situated to a cisgender incarcerated person who is not being treated for gender dysphoria and is requesting the same surgeries for other medical conditions. In *Campbell v. Kallas*, No. 3:16-cv-00261-JDP, 2018 WL 2089351 (W.D. Wis. 2018) (reversed on other grounds) the Wisconsin Department of Corrections permitted a transgender incarcerated person to apply for sex-reassignment surgery if they had a completed a "real-life experience" prior to incarceration. *Id*. The plaintiff argued that the policy constituted a "blanket ban" of medically necessary vaginoplasty for transgender incarcerated persons, whereas cisgender female incarcerated persons were not automatically barred from receiving medical necessary vaginoplasty. *Id*. The court, however, found that the plaintiff misstated the policy and that "'[The Supreme] Court has consistently upheld statutes where the gender classification is not invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances.'" *Id*. (quoting *Michael M. v. Superior Court*, 450 U.S. 464, 469 (1981). The Wisconsin Court further reasoned that the Department of Corrections' policy reflects the fact that the sexes are not similarly situated in certain circumstances.

> A cisgender female inmate need not undergo a real-life experience or hormone therapy or have persistent, well-documented gender dysphoria before obtaining vaginoplasty because a vaginoplasty for a transgender female inmate (that is, a biological male) is necessarily a different type of surgical procedure than for a cisgender female inmate (that is, a biological female). The biological female already has a vagina; the biological male doesn't. The government has an interest in ensuring that inmates receive appropriate, effective medical treatment. Employing different decision-making policies for different types of medical procedures does not violate the Equal Protection Clause.

*Campbell*, 2018 WL 2089351, at *10.

Extending the rationale applied by the Wisconsin District Court, a Louisiana District Court similarly found that a transgender incarcerated person, who alleged she was "being denied sex reassignment surgery, while cisgender female incarcerated persons suffering from cystocele (a

21

prolapsed or dropped bladder) or rectocele (a herniation of the front wall of the rectum into the back wall of the vagina) are provided with surgical treatments for their conditions. . . is not 'similarly situated' to the prisoners she uses as a basis of comparison." Thus, her equal protection claim also failed. Williams v. Kelly, No. CV 17-12993, 2018 WL 4403381, at *12 (E.D. La. Aug. 27, 2018) (citing Campbell, 2018 WL 2089351).

Plaintiff is not similarly situated to cisgender incarcerated persons seeking the same surgeries because the inquiry into the medical necessity of such surgeries is different. A man seeking a mastectomy to treat his GD must undergo a different medical evaluation than a cisgender woman seeking a mastectomy to treat a different condition that she was encountering, such as cancer. Because the underlying diagnoses precipitating the surgery are different, the patients are not similarly situated.

Accordingly, CDCR's Guidelines for Review of Gender Affirming Surgery to treat GD is not discriminatory on its face. To the contrary, the policy was created for the purpose of providing equitable access to healthcare for transgender incarcerated persons. CDCR's decision to employ different decision-making policies for different types of medical procedures does not violate the Equal Protection Clause. As discussed above, Plaintiff's initial request for GAS was denied due to a mental health concern that the Committee determined was a potential contraindication to GAS (SSUF Nos. 14, 15), and his second request for GAS was approved in part and denied in part due to a medical concern related to chronic kidney disease that required further work up (SSUF Nos. 17, 18.) These decisions were made in compliance with the Guidelines and based on assessments of Plaintiff's unique conditions and surgical requests at the time. CDCR officials' decisions were not born from a policy that treated transgender prisoners seeking GAS differently than cisgender incarcerated persons, rather, the Guidelines recognized that medical procedures being considered required particularized analysis of each patient's characteristics, and provided that flexibility.

Plaintiff has, therefore, failed to demonstrate that CDCR's Guidelines for Review of GAS to treat Gender Dysphoria was discriminatory on its face or as applied to him. For these reasons, the policy does not violate the Fourteenth Amendment.

## V.    PLAINTIFF'S CLAIMS BASED ON CALIFORNIA CODE OF REGULATIONS, TITLE 15, SECTION 3350.1 ARE MOOT.

Plaintiff also asserts that the temporary amendments to California Code of Regulations title 15, section 3350.1(c) categorically excludes GAS.  (ECF No. 33 at 7.)  However, former section 3350.1 does not identify phalloplasty as a surgery "that is not medically or clinically necessary." Moreover, under the current regulations, GAS is no longer listed as a treatment exclusion, so Plaintiff's claim is moot.  (*See* Cal. Code. Regs. tit. 15, § 3999.200(b)).  Finally, Plaintiff was never denied GAS pursuant to section 3350.1.  (SSUF Nos. 14, 15, 17, 18, 21, 22.)

"A moot action is one where the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988) (internal quotation marks and citations omitted).  "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Id*. (citation omitted).  To the extent Plaintiff relies on out-of-date policies to support a claim under the Fourteenth Amendment, his claim must be dismissed as moot.

## VI.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

The doctrine of qualified immunity protects government officials from personal liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity provides immunity from suit, not merely a defense to liability. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).  The doctrine gives "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

A qualified-immunity analysis involves a two-part inquiry. First, the Court must determine whether the alleged facts show that the defendant's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201.  Second, the Court must consider whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Id.*  The Court need not consider the two prongs in sequence but may exercise its discretion in deciding which prong to consider first in light of the circumstances at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

23

The plaintiff bears the burden of establishing that the defendant violated a constitutional right.  *Davis v. Scherer*, 468 U.S. 183, 197 (1984).  And, even if a constitutional violation occurred, a prison official is entitled to qualified immunity if the law regarding the violation was not "clearly established" or if the official could have reasonably believed his or her conduct was lawful.  *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).  A right is "clearly established" when "existing precedent [has] placed the statutory or constitutional question *beyond debate*."  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (emphasis added).  The right must be evaluated in a particularized sense, not at a high level of generality, and must be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).  Officials with a reasonable but mistaken belief as to what the law requires are still entitled to qualified immunity.  *Saucier*, 533 U.S. at 206.

Here, Plaintiff fails to establish an Eighth Amendment claim against Defendants Dr. S. Chaiken, Dr. T. Buzzini, and Dr. L. Taylor arising from the decision to deny his GAS requests, as their decisions were based on the contemporaneous assessment of his medical conditions in accordance with existing CDCR policy, and Plaintiff's disagreement with those decisions is not the basis for a Constitutional claim.  Further, Defendants Dr. R. Mitchell and Dr. S. Neumann had no role in the GAS decisions.  The first prong of the qualified immunity analysis is accordingly satisfied.  The second prong is also satisfied, because no reasonable CDCR medical personnel or officials similarly situated to the individual Defendants would believe that they violated an incarcerated person's Eighth Amendment rights when: (1) they, along with non-party co-members of the GASRC and SMART Committees, denied a transgender incarcerated person's request for GAS when that incarcerated person's mental health had not been fully assessed and well-controlled for at least one year, which posed a contraindication to surgery; (2) they, along with non-party co-members of the GASRC and SMART Committees, partially approved a transgender incarcerated person's request for GAS but denied "bottom surgery" because that incarcerated person suffered from chronic kidney disease stage 3 which needed further evaluation, including a renal ultrasound and a nephrology consultation.  (SSUF Nos. 14, 15, 17,

24

18.) Defendants are aware of no caselaw or statute putting them on notice that such decisions by medical professionals were unconstitutional at that time.

Defendants are entitled to qualified immunity as it was not clearly established in 2019 and 2020 that denying an incarcerated person's request for GAS based on the CDCR/CCHCS Guidelines for Review of Requests for GAS which, follow the guidelines established by WPATH, violated the Constitution.

## CONCLUSION

Defendants are entitled to summary judgment because the undisputed facts show that Plaintiff failed to exhaust administrative remedies for his claims against them. Additionally, Defendants did not violate Plaintiff's Eighth Amendment rights. Plaintiff cannot meet the objective prong of a medical deliberate indifference claim because the evidence establishes that Defendant's course of treatment for gender dysphoria was reasonable. Also, Plaintiff cannot meet the subjective prong of a medical deliberate indifference claim because there is no evidence Defendants knew of and disregarded a substantial risk of harm. Furthermore, Plaintiff's Fourteenth Amendment claim fails because Plaintiff was not initially denied GAS because of his transgender status. Finally, even if a constitutional violation occurred, Defendants are entitled to qualified immunity, because reasonable medical professionals in Defendants' position would not believe their decisions relating to Plaintiff's request for gender affirming treatment was unconstitutional. Accordingly, the Court should grant Defendants' motion for summary judgment.

Dated:  April 13, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
KYLE A. LEWIS
Supervising Deputy Attorney General

JULIET LOMPA
Deputy Attorney General