ROB BONTA, State Bar No. 202668
Attorney General of California
KYLE A. LEWIS, State Bar No. 201041
Supervising Deputy Attorney General
JULIET LOMPA, State Bar No. 140980
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3365
 Fax:  (415) 703-5843
 E-mail:  Juliet.Lompa@doj.ca.gov
*Attorneys for Defendants S. Neumann, L. Taylor, S. Chaiken, T. Buzzini. R. Mitchell, and J. Macomber*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **DOMINIC (AKA DIAMOND) VARGAS,**<br><br>Plaintiff,<br><br>v.<br><br>**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,**<br><br>Defendants. | 1:20-cv-00083-JLT-CDB<br><br>**SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:       The Hon. Christopher D. Baker<br>Trial Date:  Not Set<br>Action Filed:  January 16, 2020 |

As required by Local Rule 260(a), Defendants S. Neumann, L. Taylor, S. Chaiken, T. Buzzini. R. Mitchell, and J. Macomber ("Defendants") hereby submit the following Separate Statement of Undisputed Material Facts in support of their Motion for Summary Judgment as to Plaintiff Dominic Vargas's Third Amended Complaint.  Defendants identify these facts as undisputed solely for purposes of this Motion for Summary Judgment. In the event Defendants' Motion is denied, in whole or in part, Defendants reserve the right to contest all material facts at trial.

/ / /

/ / /

1

| Moving Parties' Undisputed Material Facts | Moving Parties' Supporting Evidence: |
|---|---|
| **Plaintiff , Defendants, and Background** | |
| 1. Plaintiff Dominic Vargas aka Diamond Vargas (Vargas) is a transgender male who is in the custody of the California Department of Corrections (CDCR) and incarcerated at all times to the complaint at the Central California Women's Facility (CCWF). | ECF No. 33 at 4, 10. |
| 2. Vargas suffers from gender dysphoria and alleges that Defendants S. Neumann, L. Taylor, S. Chaiken, T. Buzzini, and R. Mitchell, in their individual capacity, unlawfully denied him medically necessary gender affirming surgery in violation of the Eighth Amendment. | ECF Nos. 30, 33, 34, and 35. |
| 3. Vargas asserts that Secretary Macomber, in his official capacity, violated the Fourteenth Amendment by instituting policies that require transgender inmates to undergo a more onerous review process than cisgender inmates for obtaining medically necessary surgeries. | ECF Nos. 30, 33, 34, and 35. |
| 4. At all times relevant to the complaint, Defendant Dr. R. Mitchell was employed by CDCR as the Chief Medical Executive at CCWF. Dr. Mitchell performed the required primary care evaluation of Vargas on July 25, 2019, but he had no decision making role in Vargas's requests for Gender Affirming Surgery (GAS). | Declaration of Dr. Mitchell, ¶¶ 3, 4, 6, 7. |
| 5. At all times relevant to the complaint, Defendant Dr. S. Neumann was the Chief of Mental Health for CDCR at CCWF. Dr. Neumann never provided any treatment to Vargas, and she had no decision making role in Vargas's request for GAS. | Declaration of Dr. Neumann, ¶¶ 3, 5, 6. |
| 6. At all times relevant to the complaint, Defendant Dr. L. Taylor was the Deputy Medical Executive for Clinical Operations with CDCR and the Chair of the Statewide Medical Authorization Review Team (SMART) Committee. | Declaration of Dr. Taylor, ¶¶ 3-5. |
| 7. At all times relevant to the complaint, Defendant Dr. S. Chaiken was a Chief Psychologist for CDCR and the Chair of the Gender Affirming Surgery Review Committee (GASRC) from January 2019 approximately January 2021, and a member of GASRC until her retirement on November 2, 2021. | Declaration of Dr. Chaiken, ¶ 3. |

| | |
|---|---|
| 8. At all times relevant to the complaint, Defendant Dr. T. Buzzini was the Senior Psychologist Specialist, Inpatient Referral Unit, Statewide Mental Health Program, and member of GASRC. | Declaration of Dr. Buzzini, ¶¶ 3, 5. |
| 9. Defendant Macomber has been the Secretary of CDCR from December 12, 2022 to present. | ECF Nos. 30 at 4, fn. 2, 33 at 1; https://www.cdcr.ca.gov/about-cdcr/secretary/ |
| **Guidelines for Requests for Gender Affirming Surgery and Plaintiff's Requests** | |
| 10. In December 2018, CCHCS issued a Supplement to CCHCS/DHCS Care Guide related to Gender Dysphoria, specifically Guidelines for Review of Requests for Gender Affirming Surgery. These Guidelines provided that in accordance with California Code of Regulations Title 15, Section 3999.200, transgender patients meeting basic prerequisite criteria as established by California Correctional Health Care Services may request GAS, which shall be referred to SMART. SMART shall forward the request to the GASRC, a subcommittee of SMART, to evaluate and consider possible GAS consistent with the Guidelines. These Guidelines were in effect from December 2018 to July 2021. | Declaration of Dr. Joelson, ¶ 4, Exhibit A. |
| 11. Pursuant to the Guidelines for Review of Requests for Gender Affirming Surgery, upon receipt of Vargas's request for GAS, CCWF submitted Vargas's Request for Services to SMART, who then forwards the request to GASRC, a subcommittee of SMART. GASRC then evaluates and considers possible surgery consistent with the Guidelines. The Committee shall determine whether the patient is an appropriate candidate for Surgery from a medical and mental health perspective, following consideration of the following applicable factors and report their recommendation to SMART:<br>1) The patient has been diagnosed with GD by a Division of Correctional Health Care Services (DHCS) mental health provider and the diagnosis is supported with appropriate documentation and clinical justification as set forth by CCHCS policies and care guidelines.<br>2) The efficacy of the current treatment for GD being offered and received to ameliorate the patient's GD from both a medical and mental health perspective. | Declaration of Dr. Joelson, ¶ 4, Exhibit A. |

Separate Statement of Undisputed Facts In Support of Defendants' MSJ  (1:20-cv-00083-JLT-CDB)

3) Whether other treatments besides Surgery should be considered for addition to the existing treatment regimen.

4) The patient has no current mental health or medical contraindications that would preclude any further consideration of the request for Surgery until they are resolved or mitigated.

5) Any known medical and/or co-existing mental health concerns have been fully assessed and have been well-controlled for at least one year; do not pose a contraindication to Surgery; and are not likely to worsen with Surgery or impede surgical recovery.

6) The patient has: a) Continuously manifested a desire to live and to be accepted as a member of the preferred sex, including the desire to make his/her body as congruent as possible with the preferred sex, for at least two years; b) Lived full-time in his/her desired gender role for at least 12 months, as permitted in the correctional environment, and has received at least 12 continuous months of medically supervised hormone therapy appropriate to his/her gender goals (unless there was a medical contraindication to this therapy);

7) The patient is in significant distress due to lack of reasonable response to available nonsurgical treatment of gender dysphoria. The patient's gender dysphoria symptoms cannot be attributed to the conditions of confinement, mental illness or any other factor; and there are no available, additional treatments other than Surgery that are likely to improve or alleviate the patient's symptoms.

8) The patient has been provided with necessary and relevant information to enable him/her to understand that his/her environment will be evaluated after Surgery and any new environment may be unfamiliar and pose significant adaptive challenges. The patient understands that appropriate post-operative placement will be reviewed on a case-by-case basis by CDCR custody staff.

9) The patient can be expected to

4

| | |
|---|---|
| successfully and safely transfer and adjust medically and psychologically to confinement postoperatively.<br>10) There is no evidence suggestive of any external coercion or predation and the desire for Surgery is freely given by the patient.<br>11) Any other information available which may be relevant to their discussion or determination. | |
| 12. Upon receipt of the Committee's report of findings by SMART, that Team would meet to consider the report and any other information relevant to their determination. Pursuant to the Guidelines, SMART shall afford great weight to the decision of the GASRC and shall only reverse the decision when they find that 1) there is no substantial evidence to support the decision of the Committee; or 2) the Committee based their decision on erroneous facts; or 3) the Committee failed to consider significant relevant information bearing on the case in reaching their decision, or new evidence from credible and reliable sources has come to the attention of SMART which was not available to the Committee at the time of their decision. | Declaration of Dr. Joelson, ¶ 4, Exhibit A. |
| 13. On August 16, 2019, a Request for Services (RFS) was submitted for Vargas requesting he be considered for (GAS), specifically bilateral reduction mammoplasty, hysterectomy, salpingo-oophorectomy, and procedures for phalloplasty, to include urethroplasty, scrotoplasty, and placement of testicular prostheses. | Declaration of Dr. Joelson, ¶ 6. |
| 14. On October 29, 2019, GASRC provided a recommendation to the Statewide Medical Authorization Review Team that Vargas's request for GAS be denied due to his mental health status. In April 2019, Vargas was diagnosed with Bipolar Disorder Not Otherwise Specified (NOS), and in September 2019 he was described as manic and refusing further medications. GASRC believed these mental health concerns possibly posed a contraindication to surgery. | Declaration of Dr. Chaiken, ¶¶ 6, 7; Declaration of Dr. Buzzini, ¶¶ 7, 8. |
| 15. On November 19, 2019, Dr. Taylor and the other members of SMART found there was no substantial evidence to not support the decisions of the Committee denying Vargas' request for GAS. | Declaration of Dr. Taylor, ¶¶ 8, 9. |
| 16. On October 26, 2020, a second RFS was submitted for Vargas requesting he be considered | Declaration of Dr. Joelson, ¶ 7. |

5

| | |
|---|---|
| for GAS, specifically bilateral reduction mammoplasty, hysterectomy, salpingo-oophorectomy, and procedures for phalloplasty, to include urethroplasty, scrotoplasty, and placement of testicular prostheses. | |
| 17. On December 29, 2020, GASRC provided a recommendation to SMART that reduction mammoplasty be approved and masculinizing bottom surgeries not be approved until Vargas's medical and mental health conditions were fully assessed and well-controlled for at least one year. The Committee noted Plaintiff suffers from chronic kidney disease stage 3, which had not been further evaluated, and that the primary care provider would be ordering a renal ultrasound as well as a nephrology eConsult. The Committee further noted Plaintiff's mood lability had improved in the past year, but he continued to demonstrate intermittent mood symptoms and disruptive behavior and has declined medications that may help stabilize his mood.  The Committee concluded there was evidence that suggested Plaintiff did not have the ability to adjust medically and psychologically to his new environment postoperatively, including complying with medical and mental health interventions, as he had a history of declining psychotropic medications.   The inherent risk of each procedure is assessed and approved independently, and top surgery has much less risk than bottom surgery. | Declaration of Dr. Chaiken, ¶¶ 8, 9; Declaration of Dr. Buzzini, ¶¶ 9, 10; Declaration of Dr. Joelson, ¶ 8. |
| 18. On January 5, 2021, SMART reviewed GASRC's recommended action of "Approved" for Mr. Vargas's request for mammoplasty and any related chest surgery, and "Not Approved" for Mr. Vargas's request for any lower body surgery until medical and mental health conditions have been fully assessed and well controlled for at least one year.  SMART found there was no substantial evidence to reverse the decision of the Committee and approved the recommended action by the Committee. | Declaration of Dr. Taylor, ¶¶ 10, 11. |
| 19. On October 3, 2022, masculinizing mammoplasty surgery was performed. | Declaration of Dr. Joelson, ¶ 10. |
| 20. On April 20, 2022, another RFS was submitted for Vargas for hysterectomy, salpingo-oophorectomy, phalloplasty, urethroplasty, scrotoplasty, and placement of testicular prostheses. | Declaration of Dr. Joelson, ¶ 11; |
| 21. On November 23, 2022, SMART did not find any significant potential medical contraindications | Declaration of Dr. Joelson, ¶ 11. |

6

Separate Statement of Undisputed Facts In Support of Defendants' MSJ  (1:20-cv-00083-JLT-CDB)

| | |
|---|---|
| to GAS, specifically masculinizing bottom surgery (phalloplasty, vaginectomy, hysterectomy, salpingo-oophorectomy, urethroplasty, scrotoplasty, and placement of testicular prostheses). | |
| 22. On June 6, 2023, GASRC found there was no substantial evidence to reverse the decision of SMART and approved GAS, and masculinizing bottom surgery. | Declaration of Dr. Joelson, ¶ 11; Declaration of Dr. Buzzini, ¶ 11. |
| 23. In preparation for a phalloplasty, Vargas underwent a total hysterectomy and bilateral salpingo-oophorectomy with no complications on July 8, 2024. | Declaration of Dr. Joelson, ¶ 12. |
| 24. Beginning in August 2024, Vargas began the process of hair removal of thigh needed before phalloplasty can be performed.  During an August 13, 2024, consultation with Dr. Michael Safir, Vargas, in consultation with his physician, changed the donor site for his phalloplasty to his forearm, and in December 2024, he began electrolysis to his forearm. Electrolysis is ongoing. | Declaration of Dr. Joelson, ¶ 13; Declaration of Juliet Lompa, ¶ 3, Exhibit B. |
| 25. On September 12, 2024, Vargas underwent bilateral chest scar revision and bilateral nipple-areolar reconstruction. | Declaration of Dr. Joelson, ¶ 14. |
| 26. On October 18, 2024, another RFS was submitted for Vargas for masculinizing body contouring and facial masculinization.  On November 26, 2024, GASRC  did not find any significant potential medical contraindications to masculinizing body contouring and facial masculinization and approved them. | Declaration of Dr. Joelson, ¶ 15. |
| 27. On July 11, 2025, Vargas had a consultation with Angela Rodriguez, M.D. of ART Surgical regarding facial masculinization.  Dr. Rodriguez determined Vargas was not a candidate for facial masculinization, because he already has a masculine face. | Declaration of Dr. Joelson, ¶ 16. |
| 28. On March 23, 2026, Vargas underwent an abdominal ultrasound examination, which revealed a fat-containing supraumbilical ventral hernia. Vargas is in the process of being scheduled for a follow-up visit with Dr. Rodriguez to determine if hernia repair is necessary prior to masculinizing body contouring. | Declaration of Dr. Joelson, ¶ 18. |
| 29. Vargas is currently scheduled for phalloplasty surgery on July 1, 2026, with Michael Safir, M.D. of Align Surgical Associates, San Francisco. | Declaration of Dr. Joelson, ¶ 19. |

7

| | |
|---|---|
| 30. Vargas acknowledges that phalloplasty and masculinizing body contouring represents the final remaining steps in his gender affirming surgical transition. | Declaration of Lompa, ¶ 2, Exhibit A, Vargas Deposition at 100:2-11. |
| **Healthcare Appeals** | |
| 31. CDCR, through the Health Care Correspondence and Appeals Branch (HCCAB), and CCWF had an administrative grievance process for inmates at all times relevant to this lawsuit, which allows them to appeal any medical, dental, and mental health care grievances for adult inmates in CDCR. | Declaration of K. Martin, ¶¶ 2, 3, 5. |
| 32. Commencing on September 1, 2017, California Code of Regulations (CCR), Title 15, §§ 3999.225 – 3999.237 governs the health care grievance process. Under these regulations, incarcerated persons may grieve issues regarding health care policies, decisions, actions, conditions, or omissions using a CDCR 602 HC, Health Care Grievance form.  Cal. Code Regs. tit. 15, §§ 3999.226, 3999.227(a) (2019). Health care grievances are subject to two levels of review: health care grievances are processed at the institutional level by Health Care Grievance Offices at each institution and health care grievance appeals are processed at the headquarters level by the HCCAB, if requested by the incarcerated person. Cal. Code Regs. tit. 15, § 3999.226(a)(1) (2019). Health care grievances are subject to a headquarters disposition before administrative remedies are deemed exhausted.  Cal. Code Regs. tit. 15, § 3999.226(g) (2019).  These regulations were originally enacted on September 1, 2017, under § 3087; however, in 2019 the section numbering was changed without regulatory effect. | Declaration of K. Martin, ¶ 3. |
| 33. Health care grievances are tracked and maintained in an electronic database known as the Health Care Appeals and Risk Tracking System (HCARTS). | Declaration of K. Martin, ¶¶ 4, 5, Ex. A. |
| 34. Between the years April 1, 2019 and April 19, 2023, the date of Plaintiff's operative third amended complaint, Plaintiff submitted nine health care grievances, two of which pertained to his requests for GAS. | Declaration of K. Martin, ¶¶ 6-9. |
| 35. The first potentially relevant health care appear was assigned Tracking number CCWF HC 19000205 and was received at the institutional level on April 2, 2019.  The Plaintiff's stated issues included: deliberate indifference towards medical | Declaration of K. Martin, ¶ 7, Ex. B. |

8

Separate Statement of Undisputed Facts In Support of Defendants' MSJ  (1:20-cv-00083-JLT-CDB)

| | |
|---|---|
| needs for physical therapy and lidocaine gel, and delayed receipt of his testosterone shot. This grievance was accepted for processing. The Plaintiff was issued an Institutional Level Response dated June 3, 2019, with a disposition of No Intervention. The grievance was received for headquarters level review on July 3, 2019. The Plaintiff was issued a Headquarters Level Response dated September 19, 2019, with a disposition of No Intervention. | |
| 36. The second potentially relevant health care appear was assigned Tracking number CCWF HC 19000365 and was received at the institutional level on May 21, 2019. The Plaintiff's stated issues included: being denied SRS surgery and wanted to be scheduled immediately. This grievance was accepted for processing. The Plaintiff was issued an Institutional Level Response dated July 25, 2019, with a disposition of Intervention. The Plaintiff was informed that management of gender dysphoria is a multidisciplinary effort, and that Plaintiff's provider submitted a CDC 7243, Health Care Services Physician Request for Services for GAS to the Institutional Utilization Management Committee. The Plaintiff was informed that the Committee would review the request and subsequently refer it to the Headquarters Utilization Management Committee for evaluation and consideration for possible GAS in accordance with the Guidelines for Review of Requests for GAS, Supplement to the CCHCS/DHCS Care Guide: Gender Dysphoria. The grievance was received for headquarters level review on August 8, 2019. The Plaintiff was issued a Headquarters Level Response dated October 29, 2019, with a disposition of No Intervention. | Declaration of K. Martin, ¶ 8, Ex. C. |
| 37. Plaintiff submitted seven additional health care grievances that are unrelated to Plaintiff's requests for GAS during the time period April 1, 2019 to April 19, 2023. | Declaration of K. Martin, ¶¶ 9, 10, Exs. D-J. |

9

Dated:  April 13, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
KYLE A. LEWIS
Supervising Deputy Attorney General


JULIET LOMPA
Deputy Attorney General
*Attorneys for Defendants*

SA2024400140
45001955

10