ROB BONTA, State Bar No. 202668
Attorney General of California
KYLE A. LEWIS, State Bar No. 201041
Supervising Deputy Attorney General
JULIET LOMPA, State Bar No. 140980
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3365
 Fax:  (415) 703-5843
 E-mail:  Juliet.Lompa@doj.ca.gov
*Attorneys for Defendants S. Neumann, L. Taylor,
S. Chaiken, T. Buzzini, R. Mitchell and J. Macomber*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **DOMINIC (AKA DIAMOND) VARGAS,** | 1:20-cv-00083-JLT-CDB |
| Plaintiff, | **DECLARATION OF L. TAYLOR IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,** | Judge:  The Hon. Christopher D. Baker<br>Trial Date:  Not Set<br>Action Filed:  January 16, 2020 |
| Defendants. | |

I, L. Taylor, declare:

1.     I make the following declaration of facts based upon my own knowledge, except those matters expressly based on information and belief, which I believe to be true.  If called, I can testify competently to the facts contained in this declaration.

2.     I completed my medical degree at Howard University in 1997, and I trained at the University of California, San Francisco - Fresno Family Medicine Program from 1997 to 2000.  I have been licensed in California as a physician since 1998.

3.     I first began working for the California Department of Corrections and Rehabilitation (CDCR) in 2008 as a Physician and Surgeon at the California Correctional Women's Facility

1

(CCWF), and I promoted to Chief Physician and Surgeon in 2010.  I left CDCR's employment for three years from 2010-2013 and worked at Kaiser Permanente.  In 2013, I returned to CDCR's employment as a Physician and Surgeon at California Institution for Women (CIW).  In 2013, I was promoted to Chief Medical Executive at CIW, and I held that position until 2019.  From 2019-2023, I was an Assistant Deputy Medical Executive.  In 2023, I promoted to Deputy Medical Executive over Clinic Policy and Provider Workforce, where I am responsible for training CDCR physicians and providers, medical policy -- clinical guidelines for CDCR providers statewide, and tasks related to professional workforce such as recruitment, on-boarding, and professional practice evaluation.

4.    I served as the Chair of the Statewide Medical Authorization Review Team (SMART) Committee from approximately 2019 to 2022.  During this time period, SMART would receive the Gender Affirming Surgery Review Committee's (GASRC) individualized, multidisciplinary recommendations for approval or denial of gender-affirming surgery (GAS).  SMART would then meet to consider the request and recommendation of the GASRC Committee and any other factors or information relevant to their determination.  Per the Guidelines for Review of Requests for Gender Affirming Surgery, in reviewing the GASRC Committee's report, findings, and the recommendation, SMART shall afford great weight to the decision of the Committee and shall only reverse the decision of that body when they find: 1) in reviewing the Guideline standards for the requested procedure, there is no substantial evidence to support the decision of the Committee under those Guidelines; or 2) the Committee based their decision on erroneous facts; or 3) the Committee failed to consider significant relevant information bearing on the case in reaching their decision, or new evidence from credible and reliable sources has come to the attention of SMART, which was not available to the committee at the time of their decision.

5.    As the Chair of SMART, my duties included calling the meetings, calling each agenda item, asking members for discussion, participating in discussion, asking members to vote, tallying the vote (approve/deny), and ending the meetings.  For each case submitted by the Committee to SMART, the SMART shall approve or deny the recommended action by the Committee, and, if the Committee recommendation is to approve a surgical procedure, the patient

2

is referred to a contracted gender affirming surgeon to perform a pre-surgical assessment and perform the surgical operation approved; or 2) not approve the recommended action of the Committee and the underlying request.

6. I understand that I am a defendant in the above-entitled action filed by Dominic "Diamond" Vargas (CDCR No. WF6174), a California state inmate who was incarcerated at CCWF at all times relevant to this action. As summarized in the Court's Screening Orders (ECF Nos. 30, 34, and 35), Vargas's pleading asserts an Eighth Amendment deliberate indifference claim relating to denial of Plaintiff's request for GAS. Vargas alleges I am the "Deputy Medical Executive of clinical operations who served as the chair of the Statewide Medical Authorization Review Team ("SMART") and Gender Affirming Surgery Review Committee (GASRC)," and I "announced the first denial November 19th 2019 and then approved a partial surgery and denied the rest of my medically necessary surgery on January 5, 2021." (ECF No. 33 at 1-2.)

7. I have never treated Vargas as a staff physician or primary care provider. I have never been a member of the Gender Affirming Surgery Review Committee (GASRC).

8. On October 29, 2019, GASRC Committee made the following determinations regarding Mr. Vargas's request for GAS: 1) this 52-year-old transgender male patient, designated female at birth, had a confirmed diagnosis of gender dysphoria; 2) the patient was diagnosed with Bipolar Disorder NOS in April 2019, and in September 2019 he was described as manic, and refusing further medications; 3) these mental health concerns posed a contraindication to surgery, as it was possible these conditions would worsen with or impede surgical recovery; 4) the patient had continuously manifested a desire to live and to be accepted as a member of the preferred sex for at least two years; 5) the patient received at least 12 continuous months of medically supervised hormone therapy appropriate to his gender goals; 6) the patient reported distress related to gender dysphoria. Impairment due to gender dysphoria is difficult to differentiate from impairment due to other conditions; and 7) there were co-existing mental health symptoms contributing to the observed impairment. It was unknown whether surgery will provide relief due to the presence of impairment attributable to pre-existing conditions. Due to the findings outlined

above, the GASRC recommended a finding of "Not Approved" for Mr. Vargas's request for gender affirming surgery.

9. SMART reviewed the GASRC's recommended action to "Not Approve" Vargas request for GAS and found there was no substantial evidence to reverse the decision of the Committee. On November 19, 2019, SMART approved the recommended action by the Committee.

10. On December 29, 2020, the GASRC Committee made the following determinations regarding Mr. Vargas's request for GAS: 1) this 53-year-old transgender male patient, designated female at birth, had a confirmed diagnosis of gender dysphoria; 2) the patient suffered from chronic kidney disease stage 3, which had not been further evaluated. The primary care provider would be ordering a renal ultrasound as well as a nephrology eConsult. While the patient's mood lability had improved in the past year, he continued to demonstrate intermittent mood symptoms and disruptive behavior. The patient had declined medications that may help stabilize his mood; 3) the patient reported a high level of distress related to his breasts and genitals. He avoided looking at his chest. He bound his chest and layered clothing to reduce the appearance of his breasts. He used a sheet for visual privacy while showering. He reported distracting gender dysphoria "noise" and rumination about his body not being masculine. He expressed wanting to have a functioning penis instead of an enlarged clitoris. He reported feeling embarrassed about his body; 4) he expressed a fear of living in a prison with men and preferred to remain housed in a facility designed for women; 5) there was evidence that suggested Vargas did not have the ability to adjust medically and psychologically to their new environment postoperatively (including complying with medical and mental health interventions). The patient had a history of declining psychotropic medications; 6) the patient had received 12 continuous months of medically supervised hormone therapy appropriate to his gender goals; 7) the patient had lived full time in his gender role for at least 12 months. Due to the findings outlined above, the GASRC recommended a finding of "Approved" for Mr. Vargas's request for gender affirming mammoplasty and any related chest surgery, and "Not Approved" for Mr. Vargas's request for

4

any lower body surgery until medical and mental health conditions have been fully assessed and well controlled for at least one year.

11. SMART reviewed the GASRC's recommended action of "Approved" for Mr. Vargas's request for Mammoplasty and any related chest surgery, and "Not Approved" for Mr. Vargas's request for any lower body surgery and found there was no substantial evidence to reverse the decision of the Committee. On January 5, 2021, SMART approved the recommended action by the Committee.

12. I was not involved in any other requests for GAS by Vargas.

13. I unequivocally deny that I was ever deliberately indifferent to Vargas's serious medical needs or disregarded an excessive risk to his health and safety. I and my fellow SMART members carefully reviewed the reports of the findings by GASRC and concluded there was no substantial evidence to reverse the Committee's decision to deny Vargas's request for gender affirming surgery in October 2019; and to grant mammoplasty surgery and deny lower body surgery in December 2020.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.

Executed on April 8, 2026, at Fresno, California.


_Leslie Taylor_
_____
L. Taylor, M.D.

SA2024400140
USDC Eastern (2 Party) no cover.docx

5